AUGUST STREITWOLF, defendant and appellant,

*v.*

ELIZABETH STREITWOLF, complainant and respondent.

[Filed July 24th, 1899.]

1. In a suit brought by a wife for a limited divorce on the ground of extreme cruelty, alimony *pendente lite* was awarded her. She subsequently applied for additional alimony *pendente lite* to enable her to meet the expense for tuition and books at a law school, of her son, then in his twentieth year, who lived with and was chiefly supported by her. No order has been made giving the custody of the son to either parent. The application was granted, against the opposition of the husband, who testified that he thought his son unfitted for the law, and wished him to go into business.—*Held,* that the order giving additional alimony *pendente lite* to enable the wife, against the judgment of her husband, to secure for the son a professional education, should be reversed.

2. The right of a wife to support pending suit embraces a provision for the suitable maintenance of herself and of children who are dependent on her, including the expense of ordinary education, but will not be extended, against the opposition or without the acquiescence of the husband, to include the cost of the professional training of a grown-up son not in the custody of the wife.

On appeal from a decree dated November 26th, 1898, advised by Vice-Chancellor Pitney, who delivered the following opinion :

The suit is by the wife against the husband for divorce from bed and board on the ground of extreme cruelty.

The bill was filed on the 17th of August, 1896, and some time after that a petition was filed for alimony *pendente lite,* which was finally brought to a hearing and heard on the 2d day of November, 1896, with the result that the chancellor ordered the defendant to pay the complainant alimony at the rate of $12.50 per week.

The parties have only one child, a son, now about nineteen years old. They separated a short time before the filing of the bill, and the son has lived with his mother ever since.

On the day that the order for alimony *pendente lite* was made the defendant presented a petition to the chancellor for the cus-

Streitwolf v. Streitwolf.

tody of the son. That petition was resisted by the wife, with the result that an order was made by the chancellor that the son should be sent to the Hightstown school and that the father should pay his schooling there. That such order was made was admitted by counsel on both sides. I find nothing in writing among the papers. The boy went to the Hightstown school and stayed there only a short time before he was expelled; for what reason does not appear. It is admitted, however, that a year previously he had been expelled from the same school, and the trend of the evidence is to show that he has a wayward and uncontrollable disposition. No order was made awarding his custody to the father, and he has ever since lived with his mother.

Shortly after leaving Hightstown, in the fall of 1896, he obtained employment in New York City as clerk in a lawyer's office, and the proofs tend to show that he was a faithful, diligent and promising clerk.

In the fall of 1897 an application was made to the chancellor to increase the alimony of the wife sufficiently to enable her to send the boy to a law school in New York which was open at night. This application was met by a decree of divorce granted by a court of North Dakota in favor of the husband and against the wife. I can find no record among the papers of this application, but it was so stated by counsel during the present argument, and so admitted. The chancellor, on that second application, requested and substantially ordered, verbally, the father to pay $75 towards the boy's tuition for that winter, and the father acquiesced in such order and did pay his way at the law school.

In the meantime the wife filed a supplemental bill, asking that the Dakota decree of divorce be set aside as obtained as the result of a fraud practiced on the court. That cause has just been brought to hearing, and I have advised a decree setting aside that divorce.

Simultaneous with that hearing and decision another application is made for an increase of the alimony *pendente lite*, sufficient to pay for the second winter's tuition at the same law school.

Now the proof satisfies me that after leaving Hightstown for the last time the boy has been doing well, and that while he is restive under the control of authority like a schoolmaster, he is not restive under a sort of self-control in connection with employment; and, so far as appears, his conduct in his duties as a law clerk has been entirely satisfactory and quite encouraging, and he seems to have an ambition to study and become a lawyer and to have conducted himself in a way to indicate that that ambition may bear fruit.

Laying aside the question of age and taking the matter on its merits, I am decidedly of the opinion that it is a case where the court ought to order alimony to include the expense of the boy's education in the direction in which he seems to have taken a bent. And the only question is as to his age. Is there any time fixed by the authorities beyond which the court will not order money paid for education against a father? I recollect of no such rule at all. I have not had an opportunity to look into the cases on the subject, and I hoped that counsel would have assisted me in that respect since the matter was stirred on Wednesday last, as requested, but neither counsel has been able to assist me with any case on that subject; and at present I cannot see where the line can be drawn short of legal majority. The boy is making his home with his mother. She is giving him food and raiment. He is studying faithfully and submitting himself to the discipline of the law school. It is apparently the first real success that the boy has made in self-government; and I think that, under all the circumstances, this order ought to be made. I make it with great hesitation as to the power of the court. On the merits I think it ought to be made, and I will therefore make an order that the money be paid. I will put it in such shape as shall please Mr. Voorhees as to seeing that the money is applied to that purpose. If Mr. Voorhees himself will buy that list of books and pay the money to the proper bursar or treasurer of the University Law School he shall have the privilege of doing so, or Mr. Strong——

Mr. Strong—I would rather leave it with Mr. Voorhees.

Streitwolf *v.* Streitwolf.

The Court—So that there will be no kind of reason to believe that it will be diverted.

Mr. Voorhees—I don't want to be understood in that way—that it would be diverted by the boy. It is rather the principle in the case. I do not want to attend to it.

The Court—As general guardian of the rights of the parties, it is my duty to do that, and I will make the order in that shape if you desire it.

Mr. Voorhees—I would rather not handle it.

The Court—Then I will have it paid to Mr. Strong, as an officer of the court. The defendant will pay the $100 fee to the law school, and the bill for the cost of the law books required, and they must be bought at as low a price as possible.

The decree appealed from is in the following words : " This matter being opened to the court by Alan H. & Theodore Strong, of counsel with said complainant, upon due notice to and in the presence of Willard P. Voorhees, of counsel with said defendant, and it appearing that August Streitwolf, junior, the son of said parties, lives with the said complainant and is supported by her ; that he is of the age of nineteen years and is engaged in the study of law and for more than a year last past has attended law lectures at the University of the City of New York, and that it is desirable that he should continue so to do ; and it further appearing that the tuition fee for said attendance by said August Streitwolf, junior, for the current year is now due to the said university and unpaid, amounting to one hundred dollars, and that certain law books are required to be used by said August Streitwolf, junior, in connection with said lectures, the cost of which is the sum of twenty-nine dollars and seventy-five cents : it is therefore on this twenty-sixth day of November, in the year eighteen hundred and ninety-eight, ordered that the said defendant pay to the solicitors of the complainant herein by way of additional alimony *pendente lite* the sum of one hundred and twenty-nine dollars and seventy-five cents, to be applied by said solicitors to the payment of said tuition fee and the purchase of the books mentioned in the affidavit of said August

Streitwolf, junior, used upon the hearing of this motion and filed in this cause.'

*Mr. Willard P. Voorhees,* for the appellant.

*Messrs. Alan H. & Theodore Strong,* for the respondent.

The opinion of the court was delivered by

ADAMS, J.

It will be observed that the decree appealed from awards not permanent alimony, but, in the language of the decree itself, " additional alimony *pendente lite.*" A husband is bound to support his wife, though she is separated from him, unless she is in fault. When in apparent good faith she sues him for a divorce or for separation, and sets forth a *prima facie* case, there is no presumption that she is in fault. She is therefore entitled to alimony *pendente lite.* Otherwise she will be at her husband's mercy. But, on the other hand, while the merits of the controversy are yet undetermined, and since it may turn out that the wife is in the wrong, it is reasonable that the award of alimony pending suit should be somewhat strictly limited to the cost of litigation and to the support of the wife and of her dependent children. In *Germond* v. *Germond, 2 Paige 643,* Chancellor Walworth said: "As a general rule, to guard against any abuse of the privilege of the wife to obtain a temporary support pending a suit for a divorce or separation, and to prevent the bringing of improper suits for the mere purpose of obtaining a support during a protracted litigation, the temporary alimony must be limited to the actual wants of the wife until the termination of the suit in her favor establishes the fact that she has been abused and is entitled to a more liberal allowance."

The distinction between alimony pending suit and permanent alimony, and the nature of the husband's obligation to furnish them, respectively, in proper cases, are well stated by Vice-Chancellor Van Fleet in the following passage extracted from the opinion in *Westerfield* v. *Westerfield, 9 Stew. Eq. 195, 196,*

Streitwolf *v.* Streitwolf.

*197:* "There can be no doubt that it is ·the duty of a husband to support his wife.. This duty flows out of the marriage contract and does not at all depend on the wife's means or want of means. The husband's duty is the same in this respect whether his wife has property or not, and it is equally clear that if the husband refuses to perform this duty by abandoning his wife or separating himself from her and refusing or neglecting to,maintain and provide for her, this court may compel him to furnish suitable support and maintenance for her. But the court cannot give such relief. to the wife until the husband has had his day in court and been afforded an opportunity to contest her proofs and submit his own. An application for alimony *pendente lite* stands now solely on the ground of necessity. Originally, such allowances were made in divorce suits almost as a matter of course. At common law, by the marriage contract, the husband acquired complete control over all property owned by his wife at the time of the marriage or which she might acquire during coverture. In such a state of affairs, unless the court required the husband to support his wife and to furnish her with the means of prosecuting her suit or defending his, she would be left during the litigation both destitute and defenceless. She was, therefore, in almost all cases, regarded as a privileged suitor, who had a right to call upon her adversary for both support and the means required to carry on the litigation on her part."

The necessity spoken of by Vice-Chancellor Van Fleet in the above passage is the necessity of the wife, arising from her pecuniary inability at common law, a necessity which, as the learned vice-chancellor proceeded to observe, has been much ameliorated by the liberal modern rules as to the capacity of married women to hold property. But there is another sense in which alimony *pendente lite* "stands solely on the ground of necessity." For the reason above stated by Chancellor Walworth, it should include only items that are necessary. The word *necessary* is, indeed, to be taken in a liberal sense. As Vice-Chancellor Pitney happily said, in *Alling* v. *Alling, 7 Dick. Ch. Rep. 92, 96:* "The physical ability of the child to earn its bare food and

clothing is not the test or gauge in this court of a parent's duty to support and educate it." The necessity that is the criterion of validity is not mere physical necessity, but rather social and moral propriety, having regard to the situation of the parties and the fitness of things. Food, shelter and clothing are physical necessities. In an enlightened community the common education of a child is a moral and social necessity. Professional training is not a general necessity, but is a special advantage. Whether a young man shall study a profession is a question usually determined for him by his parents, especially by his father, with some reference to the son's taste and capacity. It is not well for courts to assume unnecessary responsibility in the critical matter of choosing a profession, as to which even the persons most deeply interested and best qualified to judge are not free from liability to error, or to stand in *loco parentis* before the *locus parentis* has been vacated or forfeited by the death, disability or misconduct of the rightful incumbent.

It may be further observed that the courts, in determining the amount of alimony, have had regard to the age and earning capacity of the minor for whose support and education the wife asks an allowance. In *Snover* v. *Snover, 2 Beas. 261,* it was directed by Chancellor Green that so much of an award of permanent alimony as was designed for the support of a daughter should cease when she should reach the age of eighteen. In *Amos* v. *Amos, 3 Gr. Ch. 171,* Chancellor William Pennington said : " Where children are grown up, it is not proper to make an allowance on their account," having evidently in mind their arrival, not at legal majority, but at a condition of earning capacity. Again, it is to be remembered that the courts are disposed to recognize and enforce proper agreements *inter partes,* touching the support of a wife. *Calame* v. *Calame, 10 C. E. Gr. 548.* Moreover, it may be material to inquire whether the court has awarded to the wife the custody of the minor child who lives with her, and the cost of whose support she asks to have included in her award of alimony. This is so, because, in the case of a grown-up child, the father's duty to furnish support and the child's duty to render service are usually reciprocal. Bear-

Streitwolf *v.* Streitwolf.

ing in mind the general considerations above stated, the force
and authority of which are evident, it remains to examine the
facts of this case and apply the appropriate rule.

The bill was filed by the wife on August 17th, 1896, for a
limited divorce on the ground of extreme cruelty.   On August
18th, 1896, a petition for alimony *pendente lite* was filed.   On
November 2d, 1896, an order was made directing the payment
of a counsel fee and alimony at the rate of $12.50 per week.
On the same day another order was made, reciting that the de-
fendant had filed his petition, praying for an order awarding
the custody of said petitioner's son, August Streitwolf, Jr., to
him during the pendency of the suit, and that it appeared that
it would be for the benefit of the infant that he should be put
to school, and that at the school he should not be visited by
either parent during the pendency of the suit, and that the father
had expressed his willingness to defray the expenses of such
disposition of the infant, and directing that said August Streit-
wolf, Jr., be placed in the Peddie Institute, at Hightstown,
New Jersey, where he formerly had been at school, and that
said petitioner pay the expenses of removing the said August
Streitwolf, Jr., to said Institute, and his expenses there, includ-
ing board, tuition, suitable clothing and petty cash, and that he
should not be visited by either parent while attending school.
No order was then made, or has ever been made, awarding the
custody of the son to either parent.   The boy was sent to the
Peddie Institute under this order, but remained only a short
time.   On August 19th, 1897, an answer to the bill was filed,
and on September 3d, 1897, a replication was filed.   No testi-
mony has been taken to substantiate the allegations of the bill.
On October 7th, 1897, the defendant obtained a fraudulent
divorce from his wife, in the State of North Dakota, which, on
supplemental bill filed in this suit, has been declared void by
the decree of the court of chancery, affirmed by this court.
This fraudulent proceeding, reprehensible as it is, throws no
light on the merits of the case made by the complainant's first
bill.   The fact that the defendant got a fraudulent divorce from
his wife, in North Dakota, has no tendency to prove that he

37

treated her with extreme cruelty in New Jersey.   The suit is at issue, with no proofs taken on either side, and with no presumption, as to that issue, for or against either party.

In January, 1897, the son, being in his nineteenth year, entered a law office and began to attend the night sessions of the law school of the University of the City of New York. It is said that an application was made to the chancellor in the fall of 1897 to increase the alimony of the wife sufficiently to enable her to pay the son's tuition in the law school for the year then beginning. There is no record of such an application, or of any order for such increase of alimony. It does appear that the defendant paid $75 towards his son's expenses for that year. The proof does not, however, warrant the conclusion that the defendant then agreed or consented to educate his son as a lawyer.

On November 10th, 1898, or thereabouts, the defendant was notified of an application for an order requiring him to pay the sum of $135 for tuition and law books for the law-school year beginning October 1st, 1898. There was no petition—merely a notice founded on an affidavit of August Streitwolf, Jr. The application was not in form for the payment of alimony *pendente lite,* but was for the payment of the sum above mentioned for tuition and books. The testimony of the father and son was taken before Vice-Chancellor Pitney. It appears from the son's testimony that he was living with his mother, earning $4 per week by work in a law office, and attending the night classes in the law school; that his mother boarded and clothed him; that his father had given him a suit of clothes and some money, and had further, at some time prior to August, 1896, found a place for him in a business house in New York City, which the son did not keep, as he thought it too hard for him. It appears from the testimony of the father that he is strongly opposed to his son's attendance on the law school, and that he wants him "to do something practical." He mentions further details of his getting his son a place in a business house. The order applied for was, in substance, granted. It is from that order that the appeal was taken. When the order was made the son was

in his twentieth year.    He is now in his twenty-first year.    His class at the law school will graduate in the year 1900.

From this recital it appears that the application to the court of chancery was virtually for an order compelling the husband, against his own judgment, by way of supporting his wife pending suit, to make a grown-up son a lawyer and to pay the expense of his professional education.    We do not find that the husband had committed himself to this course by his own conduct or that he had become bound to take it by any previous adjudication.    For reasons already stated, we think that the order appealed from was an undesirable extension of a power that exists primarily for the protection of the wife.    The son's ambition in the direction of a liberal education is in itself commendable, but upon the facts now before us and at this stage of the suit, the father cannot be forced to gratify that ambition without making an unwise exception to a good rule.

The order is reversed.

*For reversal*—THE CHIEF-JUSTICE, VAN SYCKEL, GARRISON, GUMMERE, LUDLOW, COLLINS, BOGERT, NIXON, HENDRICKSON, ADAMS, VREDENBURGH—11.

*For affirmance*—DIXON, LIPPINCOTT—2.