99 N.J. Super. 256 (1968)
239 A.2d 266
JEANNE D. NEBEL, PLAINTIFF,
v.
ARTHUR J. NEBEL, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided February 2, 1968.
*257 Mr. Harold G. Pierson for plaintiff.
Mr. Colin M. Dillon for defendant (Messrs. Pollis, Williams, Pappas & Dillon, attorneys).
WOOD, WM. FILLMORE, J.C.C. (temporarily assigned).
This case raises the question of whether this court has authority to require a divorced husband, on motion of the wife, to contribute toward the college expenses of an 18-year-old son in the mother's custody. The New Jersey law on the question is not entirely certain. Our Supreme Court has never *258 ruled thereon, and there is room for disagreement as to the meaning of the decisions of the former Court of Errors and Appeals and the Appellate Division of the Superior Court.
Final judgment of divorce was entered in this case on June 10, 1967. The preceding judgment nisi, dated March 9, 1967 and adopting the provisions of an earlier agreement between the parties, gave the plaintiff wife custody of the two minor children of the marriage, Jeffrey and Anne, then 18 and 11 years of age, respectively, and ordered the defendant to pay plaintiff $25 a week for the support of each of them and $50 a week for support of herself. A third child, John, was 21 and emancipated. At the time of the judgment nisi Jeffrey was a high school senior in Pingry School, a private institution, and John was a college senior at Princeton University. Both boys graduated at the end of the then current school year. In September 1967 Jeffrey entered Lafayette College.
By her motion, returnable November 3, 1967, plaintiff sought an order requiring defendant to pay for Jeffrey's college tuition or, in the alternative, to pay increased support for her and the two minor children so that she herself would be able to pay the tuition. In her supporting affidavit she alleged that at the time of the judgment nisi defendant had promised to contribute voluntarily a minimum of $1,000 a year, and more if his financial circumstances improved, toward Jeffrey's tuition and other college expenses and had assured her that it would not be necessary to provide for such expenses by court order. Defendant filed an answering affidavit claiming that he had stated only that he would voluntarily contribute something toward the college expenses if he was "financially able to do so." I am unable, on the basis of the affidavits alone, to determine the credibility of these inconsistent statements. However, in view of the ruling of law and finding of fact set forth herein, it is unnecessary to do so. Even if I accepted plaintiff's version of the conversation, I would be unable to say that the conversation amounted to a legally binding agreement. Hence, for the purpose of this decision, I shall assume that there was no such agreement.
*259 Incidentally, I am of the opinion that there can be no valid legal distinction between ordering defendant to pay college expenses directly and ordering him to do so indirectly under the guise of increased support.
Defendant opposed the motion, contending that (1) this court lacks the power to require him against his will to pay college expenses, and (2) even if the court has that power, his financial condition is such that he should not be called upon to contribute for Jeffrey's support any more than the sum previously ordered. Defendant did not question Jeffrey's scholastic aptitude.
At the conclusion of the oral argument on the motion I determined that, considering defendant's financial assets and earning capacity, he was well able to contribute toward college expenses despite his claim of limited current income. I ruled that he must pay half of such expenses or $1,500 a year, whichever was lesser, unless he was shielded from such an obligation by the law of this State. I reserved decision on the law and instructed the attorneys to submit memoranda thereon. I have now received and carefully considered their memoranda.
There is no published decision by a New Jersey appellate court which required a father to pay college or professional school expenses. A few cases have held that, under the circumstances there present, the father need not pay such expenses and thus indicated, at least by implication, that payment of such expenses may be ordered under different circumstances. Streitwolf v. Streitwolf, 58 N.J. Eq. 570 (E. & A. 1899); Rufner v. Rufner, 131 N.J. Eq. 193 (E. & A. 1941); Jonitz v. Jonitz, 25 N.J. Super. 544 (App. Div. 1953). Cf. Foote v. Foote, 68 A. 467 (Ch. 1908), not officially reported, where the court, by implication, indicated that college expenses might be required of the father after the children had completed their pre-college preparation. Cf. also Ziesel v. Ziesel, 93 N.J. Eq. 153 (E. & A. 1921), wherein the court mentioned the father's limited income as one of the reasons for not requiring him to pay the expenses of his son *260 at a boarding high school. But Cf. Werner v. Werner, 7 N.J. Super. 229 (App. Div. 1950).
In Streitwolf, decided in 1899, the Court of Errors and Appeals, the State's then highest court, reversed an order of the trial court which had directed the father to pay law school expenses for a 20-year-old son. This is the first published decision on the subject by the courts of this State.
Tremendous changes have occurred in our educational needs and patterns since 1899. In view of such changes Streitwolf might be deemed out of date. Nevertheless, if that case was factually similar to this one and the latest word on the subject by an appellate tribunal, this court, being at the trial level, would be duty-bound to follow its ruling and to leave the task of updating it to the appropriate appellate court. Happily, significant distinctions between the two cases are apparent and both the Court of Errors and Appeals and the Appellate Division of the Superior Court have spoken more recently upon the subject. Rufner v. Rufner, supra; Cohen v. Cohen, 6 N.J. Super. 26 (App. Div. 1949); Jonitz v. Jonitz, supra. But cf. Werner v. Werner, supra.
In Streitwolf the court was confronted with two circumstances not present here. First, the application was for only pendente lite support. Secondly, although the child was living with plaintiff mother, custody had not been awarded to either parent. That the court was influenced primarily by these circumstances and did not purport to state a general principle applicable to all situations, seems clear from the last paragraph of the opinion. Said the court, after reciting the facts of the case and specifically noting that the order appealed from was for only pendente lite support and that no custody award had ever been made:
"From this recital it appears that the application to the court of chancery was virtually for an order compelling the husband, against his own judgment, by way of supporting his wife pending suit, to make a grown-up son a lawyer and to pay the expense of his professional education. We do not find that the husband had committed himself to this course by his own conduct or that he had become *261 bound to take it by any previous adjudication. For reasons already stated we think that the order appealed from was an undesirable extension of a power that exists primarily for the protection of the wife. The son's ambition in the direction of a liberal education is in itself commendable, but upon the facts now before us and at this stage of the suit, the father cannot be forced to gratify that ambition * * *." 58 N.J. Eq., at p. 579. (emphasis added)
Earlier in the opinion the court discussed the well established principle that pendente lite support is based upon necessity and ruled that "professional training is not a general necessity, but is a special advantage." (At p. 576). Here we have passed the pendente lite stage and custody has already been awarded to plaintiff. Cf. Ziesel v. Ziesel, supra, 93 N.J. Eq., at pp. 157-158.
In Rufner the judgment nisi, pursuant to the terms of an agreement between the parties, required defendant husband to pay $50 a week for the support of plaintiff and the two daughters of the marriage, and also to pay the cost of the daughters' education, including college expenses, if they desired college training. Defendant complied with the order for nearly five years, during which period the daughters entered college. Thereafter, without the benefit of court order, defendant reduced the weekly payments to $30 and fell into arrears with the college tuition. Plaintiff then instituted proceedings to enforce the terms of the judgment. Upon a finding that defendant's financial circumstances had worsened substantially since the judgment, the trial court reduced the weekly support to $45 a week and eliminated the provision for college education expenses. The court of Errors and Appeals held that the evidence justified the trial court's findings as to changes in defendant's finances and affirmed the elimination of the college expense provision, stating (as the controlling reason for doing so) that "it is not part of a father's duty to send his children to college, irrespective of circumstances", and that while it would be "helpful and desirable to give children the best education procurable to equip them for the tasks and demands of life, whether this can extend to the range of collegiate courses must necessarily depend on the income and financial *262 capabilities of the parent" (emphasis added). 131 N.J. Eq., at p. 196. This seems to me to be a recognition, by implication, of a father's duty to provide his children with a college education if he can afford it. No reason appears why that duty, like other parental obligations, may not be judicially enforced whenever the father has lost custody of the children, and the court has acquired jurisdiction, as a result of the father's misconduct.
In Jonitz recognition of the duty of a financially able father to provide a college education for his children, and of the power of the court to enforce that duty, was not left to mere implication. There the Appellate Division quoted with obvious concurrence the following dictum from Cohen v. Cohen, 6 N.J. Super. 26, 30 (App. Div. 1949):
"* * * On the other hand, in a family where a college education would seem normal, and where the child shows scholastic aptitude and one or other of the parents is well able financially to pay the expense of such an education, we have no doubt the court could order the payment."
and then added:
"We do not accede to the contention that the court in any case is without power and authority regardless of the relevant circumstances to require a parent to provide his child with a college or vocational education." 25 N.J. Super., at p. 556
I have not overlooked Werner v. Werner, 7 N.J. Super. 229 (App Div. 1950). There defendant father appealed from the trial court's denial of his application to modify an approximately four-year-old support order, which required him to pay $110 a month for the support of plaintiff wife and two daughters. The basis for the application was that the daughters had become of age since the order was entered. The trial court denied the application because of an alleged agreement of the father to pay for the girls' college education. The Appellate Division reversed, holding that no such agreement had *263 been proved and that, under the circumstances, the father had no duty to support grown children.
In the instant case the child in question is only 18 years old, and hence the two cases are clearly distinguishable on their facts. I do not believe that Werner can properly be interpreted as holding that under no circumstances may a father be compelled to pay for his children's college education. If it is to be so interpreted, then it must be deemed to have been superseded by Jonitz, which was decided three years later.
Since its rendition nearly 15 years ago Jonitz has been widely accepted by the bench and bar as the law of this State. It would be difficult, under present-day conditions, reasonably to question the soundness of that decision. Higher education is no longer a luxury for the affluent few. It is almost an economic necessity. Opportunities for earning an adequate livelihood without college, professional or technical training are already very scarce and they are becoming scarcer.
In his memorandum defendant again pressed his contention that he lacks financial ability to pay college expenses, although (as above indicated) that contention was rejected at the time of the oral argument. I have carefully reconsidered my original determination and I am still convinced that defendant is well able to pay such expenses and that what he lacks is a sufficient fatherly interest.
Plaintiff did not make discovery of defendant's assets and apparently has only a limited knowledge thereof. Therefore, for the purpose of this determination, I relied primarily upon defendant's own statement of his assets and liabilities.
Defendant is a dentist with an established practice. His 1966 income tax return indicates that his net income for that year was approximately $11,500 after taxes. He recently purchased a $45,000 home, which he uses for his residence and dental office. His economic potential and credit standing were great enough for him to obtain a purchase money mortgage in the amount of $31,500. Defendant lives alone in this *264 home. In addition to this home defendant has a $12,770.85 stockholder interest in a realty corporation. His list of accounts payable does contain a few substantial obligations but, considering his income and potential, these obligations should not create a difficult burden for him.
Defendant suffered a heart attack in 1964, and he states that this illness adversely affected his financial condition. I have no doubt that the statement is true. However, he does not claim that he is still prevented by poor health from devoting full or a substantial amount of time to his profession.
While a man's current income is the primary fund looked to by the courts for family support, his property and capital assets, and his capacity to earn by diligent attention to his business or profession, are all proper elements for the court's consideration in fixing the amount of support. Bonanno v. Bonanno, 4 N.J. 268, 275 (1950). It seems to me inconceivable that a father who has defendant's earning capacity, and who is able to provide for himself a $45,000 home, should be unable to provide $1,500 a year for his son's education.
Defendant raised a question as to the propriety of Jeffrey's going to a private college like Lafayette, and of this court's requiring defendant to pay the expenses thereof, when a state college (Rutgers) is available at a much cheaper price. The cost of tuition, room and board at Lafayette is $2,880. At Rutgers the cost of similar services is only about half that much. At oral argument I asked plaintiff why Jeffrey had not gone to Rutgers, and her only explanation was that she and defendant had gone to so-called Ivy League schools and therefore she wanted Jeffrey to have the benefit of an education at a more prestigious institution than Rutgers.
Defendant's position is reasonable. His income and assets, though adequate, are modest by today's standards. I take judicial notice of the fact that a high quality education is available at Rutgers. There is nothing in the record to indicate that Jeffrey could not gain admission there or that the courses available there are not adequate for his needs. It is *265 quite fair, under the circumstances, to limit defendant's college expense obligation to the approximate cost of an education at Rutgers. I have already imposed such a limitation. Compare the Pennsylvania case of Commonwealth v. Larsen, 211 Pa. Super. 30, 234 A.2d 18 (Super. Ct. 1967). Unless and until it is shown that Jeffrey cannot get at Rutgers a reasonably adequate education in his chosen field, defendant will be required to contribute no more than $1,500 a year toward the expense of Jeffrey's college education as long as the cost at Rutgers remains at its present level.