762 A.2d 702

CAROL FINGER, PLAINTIFF–RESPONDENT, v.
ROGER ZENN, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued November 8, 2000—Decided December 12, 2000.

Before Judges A.A. RODRÍGUEZ, COLLESTER and FALL.

*Stephen E. Samnick*, argued the cause for appellant.

*Jacqueline M. Printz,* argued the cause for respondent (*Green-baum, Rowe, Smith, Ravin Davis & Himmel,* attorneys; *Ms. Printz,* of counsel and on the brief).

The opinion of the court was delivered by

COLLESTER, J.A.D.

The central issue of this appeal is whether a divorced spouse can be compelled to contribute to the college education of a child at a private college. Under the factual circumstances of this case we affirm the order directing defendant to make an equal contribution.

Defendant Robert Zenn appeals from those portions of a post-judgment order of the Family Part directing him to pay the following: (1) fifty percent of the cost of parties' children for a four year college education for each child, including "the cost of tuition, room and board, books, fees and laboratory expenses"; (2) fifty percent of his son David's "matriculation at George Washington University, commencing in the summer of 1999"; (3) an amount equivalent to fifty percent of child support for seven months of the calendar year while each child was in college; and (4) counsel fees to plaintiff in the amount of $3,000.

The parties were divorced on August 18, 1989. Two children were born of the marriage: David, born March 6, 1981, and Jacob, born February 25, 1983. At the divorce hearing an oral agreement was placed upon the record, assented to by the parties and incorporated into the judgment. The agreement provided that plaintiff was to retain physical custody of the children and that there was to be "joint decisional custody on important issues regarding the health and welfare of the children." With respect to college education, the agreement as stated on the record was as follows:

> Although the children certainly are not at college age—they are eight and six—the parties agree that when, I guess, David first commences college, Dr. Zenn [defendant] is receiving a credit of $25,000.00 to be applied over the four-year period of college education; that credit will execute a non-interest bearing mortgage which may be subordinated and may be substituted should the house be sold

in the future. Dr. Zenn is to receive a $25,000.00 credit over the four-year period of time.

The other obligations, with respect to college, since it is anticipated and won't be happening for a number of years from now, $6,000.00 a year might not cover all college costs; that will be a matter between the Zenn's at that time and based upon the existing law at that time. There is no agreement now with respect to the obligations beyond this credit.

David is presently attending George Washington University, and Jacob is a high school senior. Both children have the aptitude for college, and the agreement reflects that both parties expected that their sons would be college educated. Plaintiff attended the University of Pennsylvania, and defendant is a graduate of Lafayette College and New York University Dental School.

In 1998 David applied to various schools including George Washington University, his first choice, and Penn State. Defendant concedes that he discussed different colleges with his son and in fact encouraged him to apply to Lehigh University. Nothing in the record indicates that defendant spoke with David about attending or applying to Rutgers. According to plaintiff's certification, David was told by his high school guidance counselor that it was unlikely that he would be accepted at Rutgers.

Because of the inability of the parties to reach an agreement as to payment for David's college education, plaintiff's attorney proposed an equal division of college expenses. Defendant's attorney responded that defendant agreed to pay only a sum equivalent to fifty percent of the expenses for a full-time student at Rutgers University, which at that time was about $12,000 per year.

David was rejected at Penn State. He then modified his application at George Washington for early acceptance. When he was accepted, he withdrew his other applications. The annual expense of a student at George Washington at that time was about $31,000 per year.

Plaintiff moved before the Family Part for an order directing defendant to pay fifty percent of college costs for both children, requiring defendant to pay fifty percent of the cost of sending David to George Washington University and limiting any reduc-

tion of regular child support payments to twenty-five percent while David was away at college. Defendant filed a cross-motion seeking limitation of his contribution to David's college costs to fifty percent of the cost at Rutgers and for a seventy-five percent child support reduction while David was at college. Judge Zampino reduced child support for David by fifty percent "during the seven months that the child is living away at school," and he directed that defendant was to pay fifty percent of David's college expenses at George Washington. He made the following findings:

The court believes that the parties would have, if intact as a family, contribute toward the cost of the requested education and that the educational background and the goals of both the parents for the child's education both seem to be compatible and the real issue is the cost contribution raised by the child's father. This Court believes that the fairest allocation of that cost should be equal between the parties and that the financial resources of both parties are able to meet this allocation. The child has certainly shown the aptitude for the requested education and it is hopeful that the child's marks in the coming years will show such a commitment. The availability of financial aid should be explored for this year and the coming years, so that the equal division will be met after the receipt of any grants. The Court does not intend for the child to incur any loans for which the child would be responsible in the future, at least for the first 2 years of the child's schooling. This may be an issue revisited in the future when both children are in college.

This court finds that the relationship of the child to the parties is a positive one and except for the monetary disagreement here, should not be considered as a negative towards the payment of the education requested.

There is no real issue as to the parties' financial ability to contribute. Defendant is a practicing dentist whose tax return set forth an income of about $200,000 and various investments. He has a home in Short Hills valued at about $700,000 and located a few blocks away from plaintiff and his sons. His relationship with his sons is described as close. He has remarried and has a five year old child. His wife is a practicing psychiatrist.

Plaintiff has not remarried. She lives with her sons in the former marital home in Short Hills. Her alimony has terminated in accordance with the divorce agreement. She has a modest annual income of about $7,000 as a substitute teacher in the Millburn public school system. While she receives child support from defendant, plaintiff relies in large part upon the generosity of

her parents for her living costs and lifestyle. She certified that a trust established for her benefit by her father will not be available to her for about five years. Nonetheless, she asserts that she can pay one-half of the college expenses for each of her two sons.

▮ Financially capable parents may be required to contribute to the higher education of children who are qualified students. *See Newburgh v. Arrigo*, 88 *N.J.* 529, 544, 443 *A.2d* 1031 (1982); *Kiken v. Kiken*, 149 *N.J.* 441, 449, 694 *A.2d* 557 (1997); *Rector v. Rector*, 62 *N.J.* 577, 580, 303 *A.2d* 881 (1973); *N.J.S.A.* 2A:34–23(a). *See generally, Noncustodial Parent's Right As Respects Education of Child*, 36 *A.L.R.3d* 1093 (1971); Gary N. Skoloff & Laurence J. Cutler, *New Jersey Family Law Practice*, 947 (8th Ed.1996)

In *Newburgh* the Supreme Court noted the following factors as relevant to the issue of what constitutes a "necessary education: for a college-aged child:

(1) whether the parent, if still living with the child, would have contributed toward the costs of the requested higher education; (2) the effect of the background, values and goals of the parent on the reasonableness of the expectation of the child for higher education; (3) the amount of the contribution sought by the child for the cost of higher education; (4) the ability of the parent to pay that cost; (5) the relationship of the requested contribution to the kind of school or course of study sought by the child; (6) the financial resources of both parents; (7) the commitment to and aptitude of the child for the requested education; (8) the financial resources of the child, including assets owned individually or held in custodianship or trust; (9) the ability of the child to earn income during the school year or on vacation; (10) the availability of financial aid in the form of college grants and loans; (11) the child's relationship to the paying parent, including mutual affection and shared goals as well as responsiveness to parental advice and guidance; and (12) the relationship of the education requested to any prior training and to the overall long-range goals of the child."

Defendant does not dispute the applicability of these factors to his obligation to contribute to David's education. Rather, he argues that he cannot be compelled to an amount in excess of the cost of a New Jersey resident student at Rutgers or some ' equivalent New Jersey state college.

Defendant contends that the language of the property settlement agreement providing for "joint decisional authority" gives

him the authority to select the college his child attends or, alternatively, to limit his contribution to a portion of the cost of New Jersey State university or college.

Defendant's actions belie any contention that he refused to agree to a private college since he counseled David to apply to Lehigh, which has an annual cost about the same as George Washington.[1] Moreover, nothing in the agreement suggests any restriction to the college costs to a New Jersey state college. Defendant's argument that the "joint decisional authority" language gives him the power to unilaterally limit his college contribution to the cost of a New Jersey state college is antithetical to a fair consideration of the best interests of the child. *See Newburgh, supra,* 88 *N.J.* at 543–44, 443 *A.*2d 1031; *N.J.S.A.* 2A:34–23(a). In the absence of specific language in the agreement, we will not infer any such limitation. *See Hoefers v. Jones,* 288 *N.J.Super.* 590, 602, 672 *A.*2d 1299 (Ch.Div.1994) *aff'd o.b.,* 288 *N.J.Super.* 478, 672 *A.*2d 1177 (App.Div.1996).

Defendant further relies upon *Nebel v. Nebel,* 99 *N.J.Super.* 256, 239 *A.*2d 266 (Ch.Div.), *aff'd o.b.,* 103 *N.J.Super.* 216, 247 *A.*2d 27 (App.Div.1968), for the proposition that he cannot be compelled to pay more than the annual cost at Rutgers since his son could have received a quality education at that state university. In *Nebel* the Chancery judge held that a divorced father could be required to contribute to the college education of his son but limited the required contribution to the approximate cost at Rutgers rather than at Lafayette where the child was enrolled.

*Nebel* is factually distinguishable from this case because defendant's income and assets are more than adequate for a fifty percent contribution at George Washington University, especially

---

[1] While defendant's brief says that he was unaware of the cost at Lehigh, he did not so certify before the motion judge. It strains credulity for defendant to claim ignorance of the expense at Lehigh when he was recommending that college. We also note that defendant attended Lafayette College, located about ten miles from Lehigh and remarkably similar in all aspects including cost.

since he received a $25,000 equitable distribution credit for payment toward college. Moreover, to the extent that *Nebel* is read to hold that there is a ceiling on a college contribution by a divorced spouse to the cost of a state university or any public or private college, it is specifically disapproved.

Obviously, the parties' ability to pay is a critical factor in the selection of a college. *Weitzman v. Weitzman,* 228 *N.J.Super.* 346, 357, 549 *A.*2d 888 (App.Div.1988); *Moehring v. Maute,* 268 *N.J.Super.* 477, 481, 633 *A.*2d 1055 (Ch.Div.1993). However, unless the parties otherwise agree, selection of a college for a child of the marriage should not be governed by an artificial bottom line. As one of the most significant joint custodial decisions, the choice of a college requires divorced spouses to defer lingering hostility in order to determine the best interest of their child consistent with economic reality.

The extraordinary cost of a college education results in economic sacrifice by intact families as well as divorced parents. Family finances may limit college options or even make college an unfulfilled wish. To those fortunate students, college is an experience which will resonate throughout their lives. To their fortunate parents, the college experience of their child provides a unique opportunity for them to witness and participate in this stage of intellectual, moral and social maturity of their daughters and sons.

The parties to this appeal are indeed fortunate. Their sons have the aptitude for a college education. They share a good relationship with their sons. Their respective economic resources enable them to provide for their sons' college education. It is self-evident that had this remained an intact family the parties would have given due consideration to a private college and would have given great weight to the fact that George Washington was David's first choice.

There is ample credible evidence in the record to support the motion judge's determination that David's decision to attend and matriculate at George Washington University was reasonable

under the circumstances and that these financially capable parties should share equally in the expense. *Rova Farms Resort, Inc. v. Investors Ins. Co.*, 65 *N.J.* 474, 483–84, 323 *A.2d* 495 (1974); *see also Black v. Walker*, 295 *N.J.Super.* 244, 263, 684 *A.2d* 1011 (App.Div.1996).

Defendant next argues that the motion judge erred by ordering him to pay an equal share of college for Jacob, who was sixteen at the time of the June 29, 1999, order. By now Jacob is involved in the college application process. Since he has scored over 1400 on his PSATs, admission to a good university is assumed.

The Family Court possesses broad equitable powers to accomplish substantial justice. *Weitzman v. Weitzman, supra,* 228 *N.J.Super.* at 358, 549 *A.2d* 888. We are satisfied that Judge Zampino intended to do just that and to also avoid the expense to both parties of further litigation. In light of the defendant's ability to pay, there is sufficient basis to uphold the order to include Jacob subject to changed circumstances or any matter of significance not previously presented to the motion judge. *See Lepis v. Lepis,* 83 *N.J.* 139, 416 *A.2d* 45 (1980).

We further affirm the award of $3,000 to plaintiff for counsel fees. Considering the result achieved and the work performed, we find the award to be reasonable and well within the discretion of the motion judge. *R.* 4:42–9(a)(1); *Williams v. Williams,* 59 *N.J.* 229, 233, 281 *A.2d* 273 (1971).

The remaining substantive arguments raised by defendant are without sufficient merit to warrant discussion. *R.* 2:11–3(e)(1)(E).

Affirmed.