**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1488-16T2

M.F.W.,

 Plaintiff-Respondent,

v.

G.O.,

 Defendant-Appellant.

_____

Submitted January 24, 2018 — Decided August 2, 2018

Before Judges Koblitz and Suter.

On appeal from Superior Court of New Jersey,
Chancery Division, Family Part, Morris County,
Docket No. FM-14-1249-02.

Joseph J. Fritzen, attorney for appellant.

Budd Larner, PC, attorneys for respondent
(Tremain L. Stanley, of counsel; Patricia M.
Tuckman and Jessie M. Mills, on the brief).

PER CURIAM

 Defendant G.O. appeals the November 4, 2016 orders of the Family Part. The orders denied his cross-motion to enforce Article V of the Property Settlement Agreement (PSA) concerning college expenses, that he and plaintiff M.F.W. agreed when they divorced; granted plaintiff's motion to enforce defendant's compliance with

the PSA and to release their child from being required to apply for loans or other financial aid; and ordered defendant to pay seventy percent of his daughter's tuition and expenses to Georgetown University. We affirm the orders.

## I.

Plaintiff and defendant were married in 1991 and had one child, Jane,[1] who was five years old when they divorced in 2003. They agreed to a comprehensive PSA, which was incorporated into their Dual Final Judgment of Divorce (FJOD).

The PSA anticipated that Jane might go to college. If so, the parties agreed that they "shall contribute toward all reasonable and necessary college educational expenses based on each party's income and all other relevant financial circumstances in existence at that time." Under the PSA, Jane "shall apply for all loans, grants, aid and scholarships available to her, the proceeds of which shall be first applied to college costs." Where Jane would go to college was to be "on notice to and with the consultation of both parties." The decision was not to be made "unilaterally." Plaintiff and defendant had the "right" to be actively involved in the application and selection process.

---

[1] This is a fictitious name to protect her privacy.

The PSA defined "college educational expenses" as "including, but not limited to, tuition, room and board, books, reasonable transportation expenses to and from college, application fees, college preparatory courses, activity fees and other miscellaneous expenses associated with the child's attendance at college." Defendant was required to "contribute the sum of $2,000 per year into a custodial account" for Jane. Defendant "shall" use those funds "for the child's college educational costs which shall be applied as follows: [one hundred percent] of the total balance of the account toward the total college educational costs on the [first] amount due."

In 2016, Jane was accepted by Georgetown University as a freshman where the tuition bill for the first semester was $33,331.50 (inclusive of tuition and a $900 deposit). In July 2016, plaintiff e-mailed defendant about payment. She attached a spreadsheet of college preparation expenses that she had already paid. She suggested that the monies saved for Jane's college per the PSA be applied first to reimburse her for those expenses. For the remaining balance, plaintiff suggested they should contribute based on their incomes and other current relevant financial circumstances. She advised defendant that they should exchange tax returns. Plaintiff was willing to consider sharing the

expenses "equally." Plaintiff's attorney sent a letter to defendant's attorney in August 2016, making similar suggestions.

The parties could not agree on the amount of college expenses they each would pay. Plaintiff wanted reimbursement for $11,273.30 in college preparation expenses she paid for Jane. However, defendant applied the $20,000 that had been saved for Jane under the PSA to the first tuition bill, leaving a balance of $12,000. Eventually, this balance was paid in part by defendant and in part by plaintiff. Defendant did not reimburse plaintiff for the college preparation expenses.

Jane submitted an application for financial aid before the Fall 2016 semester began but she did not qualify for needs-based financial aid. She qualified for an unsubsidized student loan of $5500.

On October 5, 2016, plaintiff filed a motion to enforce the college expenses portions of the PSA. Specifically, she requested an allocation of college expenses that would require defendant to pay sixty-six percent and plaintiff to pay thirty-four percent, elimination of the PSA's requirement that Jane apply for loans or financial aid, and a credit of $9589 for the college preparatory expenses she had paid. The motion requested certain financial information from defendant and sanctions against him should he not comply, and counsel fees.

Defendant's cross-motion requested the enforcement of litigant's rights because of plaintiff's alleged failure to comply with the PSA. He asked for an order requiring plaintiff to apply for financial aid or be held accountable for those amounts. He opposed reimbursement of the college preparatory expenses. Defendant requested a modification of child support and discovery of financial information from plaintiff, particularly about certain trust funds that he claimed were available to her. He sought payment for his counsel fees.

The trust funds had been the subject of discovery in connection with the parties' divorce in 2003. They are accumulation trusts set up by plaintiff's grandmother. One trust was established by her grandmother's will. Another trust was created by her grandmother in plaintiff's name by a Trust Deed and Agreement "to hold income accumulations [in plaintiff's] family line."

In 2016, a JP Morgan vice president confirmed that the trusts "are the same entities, with the same dispositive provisions, documented in the papers filed during 2003." A letter from the trustees' attorney stated that plaintiff "has no right to receive anything in her lifetime." According to J.P. Morgan, the Trustee, "[Jane] is not a current beneficiary of any of these Trusts." Under the trust document, upon plaintiff's death, the trust account

bearing her name would be distributed to those she specified in her will, and if not specified, to her issue per stirpes. Plaintiff contends that the trusts were to preserve the assets for the future benefit of Jane and any other descendant of plaintiff.

Plaintiff and defendant submitted current case information statements (CIS's) with their motions. Defendant's CIS reflected net income of $217,412, with total expenses of $14,664 per month. He has remarried and has another child, who is a minor. In 2003, when he and plaintiff were divorced, his net income was $1548 per week as reflected on the Child Support Guidelines worksheet.

Plaintiff's CIS shows net income of $89,499, consisting of earned and unearned income. Her expenses were $10,998 per month. In 2003, the trial court imputed $57,148 in annual income to plaintiff based on certain inherited funds (not the trusts) held in an asset management account.

Following oral argument, the trial court issued three orders on November 4, 2016. Regarding plaintiff's motion, the order enforced paragraphs 20, 21 and 23 of the PSA that pertained to defendant's obligation to contribute to college expenses. The order held that defendant failed to comply with these paragraphs. It required defendant to pay seventy percent of Jane's college expenses and for plaintiff to pay thirty percent pendente lite without prejudice. Plaintiff was granted a credit of $9589.92 for

college preparatory expenses she had previously paid. Jane was "released of any requirement to apply for or obtain loans and/or other financial aid for the duration of her college education." The order provided, "In the event [Jane] is eligible and receives any scholarship(s) or grant(s), those amounts will first be deducted from [Jane's] college expenses, with the parties to pay their pro rata shares of the remainder." Defendant was ordered to provide copies of the 529 account statements.[2]

A companion order denied defendant's cross-motion, except for his request to modify child support, which was granted, modifying his obligation to $200 per week.

A third order required Jane to file a FERPA[3] with her college "to allow [d]efendant full and complete access to her scholastic and financial records." Defendant was ordered to communicate his parenting plans directly with Jane.

In the court's written supplemental statement of reasons accompanying the orders, the court reviewed the factors in Newburgh v. Arrigo, 88 N.J. 543, 545 (1982), in allocating the parties' share of college expenses. The court found that both parents

---

[2] The reference is to Section 529 of the Internal Revenue Code, permitting tax advantaged savings plans to encourage saving for future education costs. 28 U.S.C. § 529.

[3] FERPA refers to the Family Educational Rights and Privacy Act of 1974. 20 U.S.C. § 1232g.

supported Jane's pursuit of a college education. It did not give great weight to factor eleven that defendant had not been provided with advance information about Jane's college selection process. The court found that "the parties have the financial wherewithal to meet all of their daughter's financial needs for college." This was based on plaintiff's reported gross income in 2015, of $96,451 and defendants for the same time period of $268,877. The court ordered that plaintiff and defendant contribute to payment of the college expenses based on their reported net incomes after taxes, finding defendant's net income to be $217,154 in 2015 and plaintiff's net to be $90,959 for the same time.[4] The court ordered that plaintiff pay thirty percent and defendant pay seventy percent. He ordered the parties to exchange their tax returns in subsequent years so that the ratio could be adjusted. The court found it was "unfair and unjust" to require Jane to apply for "all loans, grants, aid and scholarships available to her" and to apply them first to the college costs because Jane "should not be bound to a contract which she is not a party to" and because the parents "have a legal obligation to support" her "and cannot compromise

---

[4] We note minor discrepancies between the judge's opinion and the parties' CIS's. The CIS's reported defendant's net income as $217,412 and plaintiff's net income as $89,499.

that obligation even if they both agree." The court found this provision of the PSA is "repugnant and will not be enforced."

The trial court modified defendant's child support obligation to $200 per week, taking into consideration the parties' increased incomes, the number of days that Jane will be home from college, and her overnights with each parent per year. The court considered the factors in <u>Jacoby v. Jacoby</u>, 427 N.J. Super. 109, 113 (App. Div. 2012), the parties CIS's, and defendant's other child with his current spouse, in finding that child support of $200 per week was appropriate.

On appeal, defendant contends that the trial court should have enforced the PSA as written. It should not have stricken the requirement that Jane apply for financial aid and loans. He contends the court erred by considering their incomes in allocating college costs without considering other financial circumstances of the parties, such as trust funds available to plaintiff, and should have determined which college preparatory costs were reasonable and necessary college expenses. Defendant argues that the judge did not allocate college expenses based on an appropriate analysis of the <u>Newburgh</u> factors. Defendant asserts he should have had a plenary hearing on these issues. If the case is remanded, defendant asks that it be heard by another judge.

"[W]e accord great deference to discretionary decisions of Family Part judges," Milne v. Goldenberg, 428 N.J. Super. 184, 197 (App. Div. 2012), in recognition of the "family courts' special jurisdiction and expertise in family matters." N.J. Div. of Youth & Family Servs. v. M.C. III, 201 N.J. 328, 343 (2010) (quoting Cesare v. Cesare, 154 N.J. 394, 413 (1998)). However, "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Hitesman v. Bridgeway, Inc., 218 N.J. 8, 26 (2014) (citing Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

We review orders modifying child support for abuse of discretion. Jacoby v. Jacoby, 427 N.J. Super. 109, 116 (App. Div. 2012) (citing Larbig v. Larbig, 384 N.J. Super. 17, 21 (App. Div. 2006)). "If consistent with the law, such an award will not be disturbed unless it is manifestly unreasonable, arbitrary, or clearly contrary to reason or to other evidence, or the result of whim or caprice." Ibid. (quoting Foust v. Glaser, 340 N.J. Super. 312, 315-16 (App. Div. 2001)). The Family Part's discretion to determine child support "applies equally to compelling a parent to contribute to their child's college costs." Avelino-Catabran v. Catabran, 445 N.J. Super. 574, 588 (App. Div. 2016) (citing

<u>Gotlib v. Gotlib</u>, 399 N.J. Super. 295, 308 (App. Div. 2008)). "We must accept the Family Part's determination concerning a parent's obligation to contribute toward college tuition, provided the factual findings are supported by substantial credible evidence in the record and the judge has not abused his or her discretion." <u>Ibid.</u> (citing <u>Gac v. Gac</u>, 186 N.J. 535, 547 (2006)). Once it is established that "college contribution is warranted, the inquiry turns to the amount of the financial obligation itself." <u>Ricci v. Ricci</u>, 448 N.J. Super. 546, 581 (App. Div. 2017).

In this case, the parties do not dispute that Jane should go to college, that she should attend Georgetown University or that they have sufficient resources to pay for her to attend that school. They anticipated she would attend college when they divorced because their PSA included a provision about college expenses. They defined college expenses broadly as "including, but not limited to," a list of things such as tuition, room, board, and college preparatory courses.

The PSA did not allocate how much plaintiff or defendant would pay for Jane's college expenses. Defendant argues that the trial court did not consider "other relevant financial circumstances in existence at that time" in allocating defendant's share of Jane's college expenses. He contends the court should have considered the trust funds and that he was entitled to

11

discovery about them. He argues plaintiff has taken conflicting positions with respect to the trusts and that there are fact issues requiring a hearing.

We agree with the trial court that the trusts should not be included in allocating college expenses. Nothing in the record showed that either plaintiff or Jane had the ability to control or to require distributions from the trusts. Control of the trusts rests with the corporate trustees. Plaintiff's only "right" in the accumulation trust was "who will enjoy it at her death by exercising her 'power of appointment.'" A letter from the corporate trustee said that Jane "is not a current beneficiary of any of these trusts." These were the same trusts "with the same dispositive provisions, documented in the papers filed during 2003," that the parties addressed when they were divorcing. These trusts were not treated as assets of plaintiff during the divorce. See Tannen v. Tannen, 416 N.J. Super. 248, 273 (App. Div. 2010) (providing that "defendant's beneficial interest in the [trust] was not an 'asset[] held by' her.").

The record showed no inconsistency by plaintiff in her treatment of the trusts. That Jane may benefit from the trusts, perhaps after plaintiff's death, does not disprove the unchallenged evidence that only the trustees can decide how to use the trust fund moneys. Therefore, we agree with the trial court's

decision not to consider the trust funds when allocating college expenses because neither plaintiff nor Jane controlled these funds.

The PSA provided that both parties would contribute to Jane's college expenses based on "each party's income and all other relevant financial circumstances." The court allocated seventy percent of the college expenses to defendant and thirty percent to plaintiff. We disagree with defendant's argument that the court "repeatedly stated that he would consider only income to the exclusion of all other financial resources." The court had the parties CIS's and considered them, which included the parties' assets and expenses.

Newburgh v. Arrigo, 88 N.J. 529, 545 (1982) requires that courts examine "all relevant factors" in "evaluating the claim for contribution toward the cost of higher education," including:

> (1) whether the parent, if still living with the child, would have contributed toward the costs of the requested higher education; (2) the effect of the background, values and goals of the parent on the reasonableness of the expectation of the child for higher education; (3) the amount of the contribution sought by the child for the cost of higher education; (4) the ability of the parent to pay that cost; (5) the relationship of the requested contribution to the kind of school or course of study sought by the child; (6) the financial resources of both parents; (7) the commitment to and aptitude of the child for the requested education; (8) the financial

resources of the child, including assets owned individually or held in custodianship or trust; (9) the ability of the child to earn income during the school year or on vacation; (10) the availability of financial aid in the form of college grants and loans; (11) the child's relationship to the paying parent, including mutual affection and shared goals as well as responsiveness to parental advice and guidance; and (12) the relationship of the education requested to any prior training and to the overall long-range goals of the child.

[Ibid.]

"[A] trial court should balance the statutory criteria of N.J.S.A. 2A:34-23(a) and the Newburgh factors, as well as any other relevant circumstances, to reach a fair and just decision whether and, if so, in what amount, a parent or parents must contribute to a child's educational expenses." Gac, 186 N.J. at 543; see also Catabran, 445 N.J. Super. at 591 n.8. The "parents' ability to pay is clearly the most significant" factor. Ricci, 448 N.J. Super. at 581 (citing Weitzman v. Weitzman, 228 N.J. Super. 346, 358 (App. Div. 1988)).

The court considered the factors under Newburgh. We disagree with defendant's argument that the trial court allocated college expenses without proper consideration of these factors. The court found that factors one, two, three, seven and twelve had been satisfied. Neither party was disputing that they would contribute to Jane's college (factor 1). They both valued higher education

14

for their child (factor 2). The amount of contribution sought was all of the college expenses (factor 3). No one argued that Jane did not have the commitment or aptitude for college or that it was not consistent with her goals (factors 7 and 12). The court gave little weight to factor eleven, involving Jane's relationship with her parents. Both parents wanted Jane to attend college. The court considered both parents' ability to pay (factor 4). The court knew it was allocating the expenses for Georgetown (factor 5). The court took into consideration the financial resources of the parties through consideration of their CIS's (factor 6). The parties did not present proof of the child's assets (factor 8). Neither party raised issues about Jane's income or employment (factor 9). The court addressed loans, financial aid, grants and scholarships. The court would not enforce the provision regarding loans and financial aid but included in its order that if Jane did obtain scholarships or grants, these would be applied to reduce college expenses (factor 10).

Application of the Newburgh factors did not require a plenary hearing here. "It is only where the affidavits show that there is a genuine issue as to a material fact, and that the trial judge determines that a plenary hearing would be helpful in deciding such factual issues, that a plenary hearing is required." Shaw v. Shaw, 138 N.J. Super. 436, 440 (App. Div. 1976). We review the

court's order for abuse of discretion. Costa v. Costa, 440 N.J. Super. 1, 4 (App. Div. 2015). There were no disputed issues of fact involving the Newburgh factors that would warrant a hearing.

Defendant argues that the trial court should have enforced the provision of the PSA that required Jane to apply for loans, financial aid, grants and scholarships. "Absent 'compelling reasons to depart from the clear, unambiguous, and mutually understood terms of the PSA,' a court is generally bound to enforce the terms of a PSA." Catabran, 445 N.J. Super. at 589 (quoting Quinn v. Quinn, 225 N.J. 34, 55 (2016)). "[W]here matters in dispute in a post-judgment matrimonial motion are addressed in a PSA, courts will not 'unnecessarily or lightly disturb[]' the agreement so long as it is fair and equitable." Ibid. (alteration in original) (quoting Quinn, 225 N.J. at 44). However, there is an exception that "if circumstances have changed in such a way that strict enforcement of the agreement would no longer be equitable, a court remains free to alter prior arrangements." Id. at 590.

The trial court did not enforce this provision because circumstances had changed. Defendant's net income had increased from $1548 per week[5] in 2003, when the parties divorced, to

---

[5] This is $80,496 annually.

$217,412 annually, as reported in his 2016 CIS. Plaintiff also reported higher income. In 2013, she had been imputed an annual income of $57,148. Her 2016 CIS showed earned and unearned income net of taxes of $89,499. The court found "unfair and unjust" the provision that required Jane to apply for loans and financial aid because it was the parents' obligation to pay for college and they had the ability to do so. Defendant acknowledged that "[t]he parties both have significant financial resources and can afford to send their daughter to Georgetown University."

The court did not err by not enforcing this provision. First, Jane did apply for financial aid in 2016. She did not qualify for needs-based financial aid but did qualify for a $5500 unsubsidized student loan.[6] Second, the court's order permits grants and scholarships to be used to reduce college expenses. We have no reason to believe that Jane will not pursue these opportunities. Therefore, the court's order related to student loans and financial aid. We cannot say, given the parties' incomes, that the court erred by not requiring Jane to obtain loans or other financial aid where she would be financially obligated to repay the funds in the future. Her parents had agreed to pay for her college expenses under the PSA. This would include any loans to pay those expenses.

---

[6] It is not clear from the record if these funds were obtained.

See <u>Finger v. Zenn</u>, 335 N.J. Super. 438, 442 (App. Div. 2000) (implicitly affirming decision not to require child to "incur any loans for which the child would be responsible in the future" for at least the first two years).

Defendant contends that the trial court should not have provided a credit of $9589.92 to plaintiff for college preparatory expenses without a hearing. We do not agree that a hearing was required. Defendant did not take specific issue before the trial court with any of the expenses; he included that detail for the first time on appeal. We "will decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available." <u>Nieder v. Royal Indem. Ins. Co.</u>, 62 N.J. 229, 234 (1973). Neither plaintiff nor the trial court had the ability to address defendant's actual objections.

Because we affirm the trial court, we do not consider defendant's request that the matter be assigned to a different judge on remand. If the issue were squarely before us, however, we would deny the request. The fact that the judge ruled against a party is not grounds for disqualification. See <u>Strahan v. Strahan</u>, 402 N.J. Super. 298, 318 (App. Div. 2008) ("Bias cannot

be inferred from adverse rulings against a party.").  In addition, the record did not support the need for disqualification.[7]

After carefully reviewing the record and the applicable legal principles, we conclude that defendant's further arguments are without sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[7] Defendant also requested an award of attorney's fees in his cross-motion before the trial court.  This issue was not raised in his merits brief on appeal.  We consider it to be waived. Gormley v. Wood-El, 218 N.J. 72, 95 n.8 (2014); Drinker Biddle v. N.J. Dep't of Law & Pub. Safety, Div. of Law, 421 N.J. Super. 489, 496 n.5 (App. Div. 2011) (noting that claims not addressed in merits brief are deemed abandoned); see Pressler & Verniero, Current N.J. Court Rules, cmt. 5 on R. 2:6-2 (2018).