228 N.J. Super. 346 (1988)
549 A.2d 888
RISA WEITZMAN (NOW SMITH), PLAINTIFF-APPELLANT,
v.
GERALD WEITZMAN, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued September 26, 1988.
Decided October 27, 1988.
*349 Before Judges DEIGHAN and BAIME.
*350 Jack L. Wolff argued the cause for appellant (Scerbo, Kobin, Litwin & Wolff, attorneys, Jack L. Wolff on the brief).
George E. Sabbath argued the cause for respondent (Sabbath, Struble, Appelt & Ragno, attorneys, George E. Sabbath on the letter-brief).
The opinion of the court was delivered by BAIME, J.A.D.
Plaintiff appeals from a post-divorce judgment order denying her motion for reimbursement of defendant's proportionate share of college expenses she advanced on behalf of the parties' two children. Plaintiff also appeals from other provisions contained in the order denying her application for reimbursement of medical, dental and insurance expenses. Relying upon a cryptic and ambiguous order which had been entered approximately four years earlier denying plaintiff's motion requesting somewhat similar relief, the trial court apparently determined that it was divested of the power to consider the present application on the merits. We reverse.
We need not recount the facts at length. The parties were divorced on April 10, 1973. The final judgment, which incorporated a property settlement agreement, was supplemented some six months later. The supplemental judgment directed defendant to pay plaintiff $25 per week for each of the parties' two children "until emancipation," to provide Blue Cross-Blue Shield medical insurance or its equivalent for the children's benefit, and to be "responsible for extraordinary medical and dental expenses." In the latter respect, plaintiff was required to give defendant advance notice of anticipated extraordinary expenses and to permit him to have the children examined by a physician or dentist of his own choosing.
Although the paltry record is generally uninformative, it is clear that both parties confronted difficult economic plights following the divorce. At least for some period of time, plaintiff found it necessary to accept public assistance. In a similar *351 vein, defendant was sporadically employed during this period. Sometime in the autumn of 1982, plaintiff sought a court order compelling defendant to pay his proportionate share of expenses for the room, board and tuition of the parties' oldest child who had matriculated at Trenton State College. On December 17, 1982, an order was entered granting each party discovery. The matter proceeded at a desultory pace until December 1985 when the parties filed cross-motions, plaintiff's seeking a proportionate share of their daughter's college expenses, and defendant's seeking to suspend payment of child support without accumulation of arrears.
Unfortunately, the record is not altogether clear with respect to the manner in which these motions were resolved. No oral argument or evidentiary hearing was conducted. All that we have is a cryptic order signed by the then presiding judge of the Family Part, denying defendant's motion to suspend support payments. The order, which was prepared by plaintiff's attorney, contained provisions requiring defendant to pay a proportionate share of college expenses, but these portions were crossed out by the court. According to plaintiff's counsel, no appeal was taken from that order because defendant had moved to Texas and then California, and, in any event, was financially unable to contribute.
Plaintiff, who had remarried, continued to shoulder the burden of her daughter's college education. In addition, the younger of the two children ultimately graduated high school and matriculated at William Paterson College. Although she left college after three semesters, plaintiff expended $3,556.40 on her behalf during this period. Ultimately the older daughter graduated from Trenton State College. It is undisputed that plaintiff paid a total of $20,585.20 to finance her children's education.
Some three months after her daughter's graduation, plaintiff filed a motion seeking (1) reimbursement by defendant of his proportionate share of amounts paid for the children's college *352 education, (2) reimbursement of payments made to secure medical insurance as a result of defendant's alleged failure to comply with his obligation under the supplemental divorce judgment, (3) reimbursement of extraordinary medical and dental expenses and (4) payment of arrearages. In support of her application, plaintiff emphasized that defendant's mother had recently died, leaving him with the bulk of her estate. It was estimated that the value of the estate was in excess of several hundred thousand dollars. Plaintiff argued that defendant, who had remarried, was obliged to reimburse her for expenses she had incurred on behalf of the parties' two children. Although the amount of arrearages was stipulated and paid, the trial court denied the remainder of plaintiff's motion. As we have noted, the trial court relied upon the prior order denying plaintiff's motion to compel defendant to contribute to the children's college education.
We are convinced the trial court was mistaken in determining that the order entered some four years earlier had a preclusive effect upon the issues plaintiff sought to raise. Initially, we point out that the prior order contained no reference to defendant's obligation to maintain Blue Cross-Blue Shield coverage on behalf of the children. Nor did it relate in any way to amounts plaintiff had expended for the children's orthodontics. Although the record discloses that the parties had engaged in negotiations pertaining to these matters, we stress that the prior order is wholly devoid of anything suggesting that these issues had been presented to the court. Succinctly stated, the trial court was inaccurate in its statement that the question of reimbursement for medical insurance and orthodontic expenses had been resolved previously by the order of January 16, 1984.
Beyond this, we are of the view that the prior order was not of the quality which would, as the trial court perceived it, divest it of the authority to rehear the matter. As we observed previously, no oral argument or evidentiary hearing was conducted *353 on plaintiff's prior motion. No statement of reasons accompanied the order. Although the judge crossed out the portion of the proposed order requiring defendant to pay a proportionate share of the daughter's college expenses, it cannot fairly be said that this somewhat enigmatic action was intended to resolve the issue on the merits for all time. See Wanner v. Litvak, 179 N.J. Super. 607, 610-612 (App.Div. 1981). Cf. State v. Reldan, 100 N.J. 187, 203-204 (1985).
The fact that plaintiff failed to appeal from the prior order or seek clarification from the trial court did not preclude her from renewing her application. It is undisputed that defendant had left the state, and, in any event, was impecunious. It would be wholly unreasonable to require plaintiff to file a costly appeal under these circumstances. Although perhaps it would have been wise had plaintiff sought clarification or taken other action to reserve her right to such reimbursement in the future, it hardly can be said that she voluntarily waived this right by failing to take such action.
Wholly apart from these considerations, the court's determination was plainly inconsistent with the broad equitable powers of trial judges to review and modify alimony and support orders at any time, as recognized by N.J.S.A. 2A:34-23. That statute provides in pertinent part that such "[o]rders ... may be revised and altered by the court from time to time as circumstances may require." Ibid. In Lepis v. Lepis, 83 N.J. 139 (1980), our Supreme Court stressed that "[a]s a result of this judicial authority, alimony and support orders define only the present obligations of the former spouses" and "[t]hose duties are always subject to review and modification on a showing of `changed circumstances.'" Id. at 146. See also Smith v. Smith, 72 N.J. 350, 360 (1977). While we recognize that a claim of "changed circumstances" should not be a shibboleth used to open the floodgates to an avalanche of repeated motions, all seeking redress for the same perceived grievance, we are satisfied that plaintiff's motion and accompanying *354 papers presented genuine issues that should have been addressed and decided by the trial court. See Wanner v. Litvak, supra, 179 N.J. Super. at 611-612.
Since the trial court did not consider plaintiff's application on its merits, we are obliged to reverse and remand for further proceedings. We merely offer the following comments for future guidance. The principal issue presented is whether defendant's recent inheritance, which now enables him to perform an obligation he was unable to assume when his children attended college, constituted such a "changed circumstance" as to compel him to reimburse plaintiff for the amounts she expended for that purpose. In this respect, defendant contends that the child support order contained in the supplemental divorce judgment operated "in praesenti" and reflected his then financial ability to pay. He claims that it would be unfair to retroactively increase his child support obligation based upon the unforeseeable happenstance of his inheritance.
The question presented is of first impression. We have long held that a court "has every right to appraise realistically [a spouse's] potential earning power." Mowery v. Mowery, 38 N.J. Super. 92, 102 (App.Div. 1955), certif. den. 20 N.J. 307 (1956). "In treating the matter of support, our courts have always looked beyond the [spouse's] claims of limited resources and economic opportunity." Ibid. Although historically, "[t]he [spouse's] current income is the primary fund looked to, nevertheless his property and capital assets, `his capacity to earn the support awarded by diligent attention to his business  his earning capacity or prospective earnings'  are all proper elements for the court's consideration in fixing the amount of the award." Id. 38 N.J. Super. at 105, quoting Bonanno v. Bonanno, 4 N.J. 268, 275 (1950). "There is no case ... in our jurisprudence which holds that current earnings are the sole criterion to establish a party's obligation for support." Lynn v. Lynn, 165 N.J. Super. 328, 341 (App.Div. 1979), certif. den. 81 N.J. 52 (1979). Where an increase in spouse's ability to pay is *355 fairly predictable, inventive measures can and should be taken to insure that his support obligation reflects this fact. This can take the form of "the trust devise," id. 165 N.J. Super. at 342, the invasion of capital or savings, id. at 343, or any other means reasonably designed to assure the appropriate support and maintenance of the children.
The problem here is that defendant's enhanced financial capacity was not reasonably foreseeable when the divorce judgment was entered and his support obligation established. Under those circumstances, it is understandable that in the 17-year period following the divorce no provision was ever made for the eventuality that defendant's financial status would change. As we said in Dunne v. Dunne, 209 N.J. Super. 559 (App.Div. 1986), "a court should not ordinarily lay down rules for the future which will depend upon circumstances materially different from those shown by the evidence" and which are not fairly predictable. Id. at 568.
We recognize the danger attendant to recasting retrospectively a spouse's support obligation based upon an unexpected enhancement of his financial ability. Even in the context of post-divorce judgment litigation where the "changed circumstance" doctrine has left the parties' financial obligations somewhat fluid, there must be some room for the right of repose and the value of finality. We are not unmindful of the perils of reviewing such obligations from the vantage point of twenty-twenty hindsight and revising them based upon the fortuitous and unpredictable changing and shifting financial fortunes of the parties.
This much conceded, countervailing considerations strongly militate in favor of plaintiff's right to reimbursement of amounts she paid for her children's college education in the unusual circumstances of this case. We begin with the principle that parents are "equally charged with their [children's] care, nurture, education and welfare...." N.J.S.A. 9:2-4. See also Grotsky v. Grotsky, 58 N.J. 354, 356 (1971); Cohen v. *356 Cohen, 6 N.J. Super. 26, 29 (App.Div. 1949); Sakovits v. Sakovits, 178 N.J. Super. 623, 627 (Ch.Div. 1981). In general, this obligation terminates upon the emancipation of the child. Emancipation can occur upon the child's marriage, by court order, or by attainment of an appropriate age. Newburgh v. Arrigo, 88 N.J. 529, 543 (1982). A rebuttable presumption against emancipation exists prior to attaining the age of majority. See N.J.S.A. 9:17B-3. Parents are thus not ordinarily under a duty to support children after the age of majority.
However, "in appropriate circumstances, the privilege of parenthood carries with it the duty to assure a necessary education for [the] children." Newburgh v. Arrigo, supra, 88 N.J. at 543. The concept of what constitutes a "necessary education" has changed considerably in recent years. In Khalaf v. Khalaf, 58 N.J. 63 (1971), our Supreme Court observed that "[w]hile a `common public school and high school education' may have been sufficient in an earlier time, ... the trend has been toward greater education." Id. at 71, quoting Ziesel v. Ziesel, 93 N.J. Eq. 153 (E. & A. 1921). See also Limpert v. Limpert, 119 N.J. Super. 438, 441 (App.Div. 1972); Sakovits v. Sakovits, supra, 178 N.J. Super. at 628.
This trend was more recently noted by the Court in Newburgh v. Arrigo, supra. There, as in its earlier opinion in Khalaf, the Court observed that "[i]n the past, a college education was reserved for the elite, but the vital impulse of egalitarianism has inspired the creation of a wide variety of educational institutions that provide post-secondary education for practically everyone." 88 N.J. at 544. While the cost of a college education has vastly increased over the years, "[s]tate, county and community colleges, as well as some private colleges and vocational schools provide educational opportunities at reasonable costs." Ibid. Emphasizing the emerging need for post-secondary education, the Court stated that "[i]n general, financially capable parents should contribute to the higher education of children who are qualified students" and "[i]n *357 appropriate circumstances, parental responsibility includes the duty to assure children of a college and even of a post-graduate education such as law school." Ibid. Justice Pollock, writing for the Court, enunciated specific standards and guidelines to be applied:
In evaluating the claim for contribution toward the cost of higher education, courts should consider all relevant factors, including (1) whether the parent, if still living with the child, would have contributed toward the costs of the requested higher education; (2) the effect of the background, values and goals of the parent on the reasonableness of the expectation of the child for higher education; (3) the amount of the contribution sought by the child for the cost of higher education; (4) the ability of the parent to pay that cost; (5) the relationship of the requested contribution to the kind of school or course of study sought by the child; (6) the financial resources of both parents; (7) the commitment to and aptitude of the child for the requested education; (8) the financial resources of the child, including assets owned individually or held in custodianship or trust; (9) the ability of the child to earn income during the school year or on vacation; (10) the availability of financial aid in the form of college grants and loans; (11) the child's relationship to the paying parent, including mutual affection and shared goals as well as responsiveness to parental advice and guidance; and (12) the relationship of the education requested to any prior training and to the overall long-range goals of the child. [Id. at 545].
We are of the view that these factors should be applied by the court on remand in determining whether defendant should be compelled to reimburse plaintiff for the amounts she advanced for the children's college education. In making this determination, we are not unmindful that the duty to contribute to higher education costs, as described by the Supreme Court in Newburgh v. Arrigo, supra, was said to depend on "financially capable parents," 88 N.J. at 544, and the "ability ... to pay," 88 N.J. at 545, such amounts. Nevertheless, plaintiff unilaterally assumed and shouldered this burden. During this difficult period, defendant remained on the sidelines. Had he obtained his inheritance at an earlier time, clearly it would have been incumbent upon him to share in this joint, coequal obligation. It would be patently unfair were we to permit defendant to avoid fulfilling his parental responsibility on the fortuitous circumstance that his financial status and capacity improved some three months after his daughter graduated college rather *358 than four years earlier. Depending upon the trial court's assessment of the factors described in Newburgh v. Arrigo, supra, we perceive no unfairness in compelling defendant "to do what in equity and good conscience should be done for his children." Mowery v. Mowery, supra, 38 N.J. Super. at 102.
There is nothing in the record to suggest that, in the seventeen years since his divorce, defendant conducted his financial affairs on the belief that he would ultimately obtain a substantial inheritance from his mother, or that such inheritance would be sacrosanct and beyond the reach of his other obligations. Nor is there anything to support the thesis that he relied upon the inviolability of his inheritance. Thus, this is not a case in which a retroactive recasting of a party's support obligation would in any sense impair his rightful expectations. The only "right" that will be lost by defendant in the event he is required to reimburse plaintiff is the "right" to enjoy, with his new family, the fruits of his inheritance free of any obligation owed to his old. In our view, that "right" is not worthy of recognition.
We must not lose sight of the broad equitable powers of the Family Part to accomplish substantial justice. Although the precise question presented by this appeal is novel, we emphasize that this is not the first time a court has been asked to retroactively modify or revise a support order. It is well-established, for example, that "on an application to determine the amount of arrearages and to compel their payment, the court has discretion to determine whether the prior support order or judgment should be enforced and whether and to what extent a spouse should be forced to pay...." Mastropole v. Mastropole, 181 N.J. Super. 130, 141 (App.Div. 1981). See also Brennan v. Brennan, 187 N.J. Super. 351, 357 (App.Div. 1982); Winter v. Winter, 162 N.J. Super. 456, 561 (App.Div. 1978); Tancredi v. Tancredi, 101 N.J. Super. 259, 261 (App.Div. 1968); Liss v. Liss, 19 N.J. Super. 358, 361 (App.Div. 1952); Federbush *359 v. Federbush, 5 N.J. Super. 107, 110 (App.Div. 1949); Madden v. Madden, 136 N.J. Eq. 132, 136 (E. & A. 1945). Paradoxically, defendant, in his brief and again during oral argument, has asked us to exercise this power and extinguish his obligation to pay "extraordinary medical expenses," because plaintiff was dilatory in pursuing her remedy. The point to be stressed is that in both situations the court has the equitable power to review prior support orders and to alter and modify them retroactively when justice plainly requires it.
Again, we stress the limited contours of our holding. We find that the trial court erred when it imbued the prior order of the Family Part with the quality of finality. In our view, the prior order had no such preclusive effect. We hold that plaintiff's application for reimbursement of college expenses should be considered on the merits. On remand, the issue is to be addressed within the framework of the factors set forth in Newburgh v. Arrigo, supra. In addition, other equitable considerations, such as the passage of time,[1] whether and to what extent defendant may have relied upon the inviolability of his inheritance, etc. should be applied. As to plaintiff's application for reimbursement of "extraordinary medical expenses" and insurance costs, the court should consider whether plaintiff was dilatory in pursuing her remedy and whether and to what extent defendant was prejudiced thereby.
The order of the Family Part is reversed and the matter is remanded for further proceedings in accordance with this opinion.
NOTES
[1] During oral argument defendant raised the specter of motions being made "twenty or more years after the event," based upon an unexpected change in a spouse's financial status. The short answer is that the passage of time constitutes a factor, and in some cases a substantial factor, militating against ordering reimbursement. As we have pointed out, however, here plaintiff filed her application for reimbursement approximately three months after her daughter graduated from college.