**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0655-19T1

VIJAYAKUMAR PAUL
VALSALEN,

    Plaintiff-Appellant,

v.

VALSA PAUL,

    Defendant-Respondent.

_____

Submitted November 30, 2020 – Decided December 21, 2020

Before Judges Sabatino and Gooden Brown.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Gloucester County, Docket No. FM-08-0585-06.

Smedley Law Group, Inc., attorneys for appellant (AllynMarie Smedley and Ryan D. Foran, on the briefs).

Valsa Paul, respondent pro se.

PER CURIAM

In this post-judgment matrimonial case, an ex-husband, plaintiff Vijayakumar Paul Valsalen, appeals the Family Part's August 30, 2019 order granting the motion of his ex-wife, defendant Valsa Paul, to terminate her alimony payments to him. The court's ruling was predicated on a finding of changed circumstances, essentially stemming from the ex-wife's serious medical issues and her resulting retirement from work. We affirm.

Since the parties themselves are familiar with the facts, we recount only a limited amount of that background here. The parties divorced in 2006, after a twenty-six-year marriage. With the assistance of their respective counsel at the time, the parties negotiated a Property Settlement Agreement ("PSA"). The court approved the PSA as part of the divorce judgment.

The parties agreed in their PSA to award primary custody of their sixteen-year-old child to Valsalen, with child support payable by Paul.[1] The PSA imputed Paul's annual income to be $110,000 and Valsalen's to be $50,000.

Pursuant to the PSA, Paul agreed to pay Valsalen $300 per week in alimony. She also agreed to maintain a life insurance policy, with Valsalen as the beneficiary.

---

[1] Child support is no longer an issue because the child is emancipated.

A-0655-19T1

Several years later, Paul experienced several significant medical issues, including a brain tumor. Consequently, she retired from her nursing job in mid-2018, and ceased making alimony payments to Valsalen. Approximately a year later, Paul moved in the Family Part to terminate her alimony obligation.

Valsalen opposed the motion. Among other things, he argued that: the PSA called for his ex-wife to pay him alimony on a permanent basis; she failed to establish a sufficient change in circumstances to justify relief from that obligation; he still needed the alimony to sustain his lifestyle; and that Paul had improperly stopped paying the monthly sums unilaterally without the court's authorization.

Following oral arguments, the trial court terminated Paul's alimony and life insurance obligations without a plenary hearing. As part of its detailed analysis, the court concluded that Paul had a good faith reason for retiring at the age of sixty-six in light of her diminished health, and that she had established a sufficient change in circumstances to terminate alimony. The court further observed that Valsalen was now receiving Social Security benefits as a result of Paul's retirement, and that the parties now have roughly equal incomes when their respective Social Security payments are considered. However, the court did order Paul to make back payments for the alimony she withheld prior to

3

filing the motion, covering the period from July 13, 2018 through June 10, 2019.

The judge declined to award either party counsel fees.

Valsalen now appeals. He challenges substantially all of the trial court's factual findings, and requests a plenary hearing on multiple issues. Among other things, he argues the trial court erred by failing to consider his comparative inability to have saved for retirement, by overlooking or subordinating his expectations under the PSA to continue to receive permanent alimony, and by analyzing the alimony issues with an improper consideration of assets subject to equitable distribution. He contends the trial court's decision was arbitrary and capricious, and that, at the very least, the case should be remanded for a plenary hearing with testimony.

Paul, who is now self-represented, opposes the appeal. However, she has not cross-appealed the court's mandate that she pay the sums she had unilaterally withheld.

Our scope of review of these post-judgment financial issues is guided by well-established principles. In reviewing the Family Part's rulings in matrimonial cases, we generally accord considerable deference to that court's expertise in family matters and its exercise of discretion. See Cesare v. Cesare, 154 N.J. 394, 411-12 (1998); see also Pascale v. Pascale, 113 N.J. 20, 33

(1988). We are bound by the trial court's factual findings so long as they are supported by sufficient credible evidence. Gnall v. Gnall, 222 N.J. 414, 428 (2015). That said, we review de novo a trial court's interpretations of law and its legal conclusions. Landers v. Landers, 444 N.J. Super. 315, 319 (App. Div. 2016) (citing D'Agostino v. Maldonado, 216 N.J. 168, 182 (2013)).

Applying those familiar principles here, we affirm the trial court's determination, substantially for the sound reasons expressed by Judge John C. Eastlack. We add a few comments by way of amplification.

It has been long recognized that our courts have "broad equitable powers . . . to review and modify alimony and support orders at any time." Weitzman v. Weitzman, 228 N.J. Super. 346, 353 (App. Div. 1988); see also N.J.S.A. 2A:34-23; Reese v. Weis, 430 N.J. Super. 552, 569-70 (App. Div. 2013).

The relevant statute governing the termination of Paul's alimony is N.J.S.A. 2A:34-23(j)(3). With respect to post-divorce retirement, the statute directs:

> j. Alimony may be modified or terminated upon the prospective or actual retirement of the obligor. . . .
>
> (3) When a retirement application is filed in cases in which there is an existing final alimony order or enforceable written agreement established prior to the effective date of this act, the obligor's reaching full retirement age as defined in this section shall be

deemed a good faith retirement age. Upon application by the obligor to modify or terminate alimony, both the obligor's application to the court for modification or termination of alimony and the obligee's response to the application shall be accompanied by current Case Information Statements or other relevant documents as required by the Rules of Court, as well as the Case Information Statements or other documents from the date of entry of the original alimony award and from the date of any subsequent modification. In making its determination, the court shall consider the ability of the obligee to have saved adequately for retirement as well as the following factors in order to determine whether the obligor, by a preponderance of the evidence, has demonstrated that modification or termination of alimony is appropriate:

(a) The age and health of the parties at the time of the application;

(b) The obligor's field of employment and the generally accepted age of retirement for those in that field;

(c) The age when the obligor becomes eligible for retirement at the obligor's place of employment, including mandatory retirement dates or the dates upon which continued employment would no longer increase retirement benefits;

(d) The obligor's motives in retiring, including any pressures to retire applied by the obligor's employer or incentive plans offered by the obligor's employer;

(e) The reasonable expectations of the parties regarding retirement during the marriage or civil union and at the time of the divorce or dissolution;

6

(f) The ability of the obligor to maintain support payments following retirement, including whether the obligor will continue to be employed part-time or work reduced hours;

(g) The obligee's level of financial independence and the financial impact of the obligor's retirement upon the obligee; and

(h) Any other relevant factors affecting the parties' respective financial positions.

[Ibid. (emphasis added).]

Although the alimony statute was substantially amended by the Legislature in 2014, subsection (j)(3), the relevant subsection here, follows the procedural framework of the Supreme Court's seminal opinion of Lepis v. Lepis, 83 N.J. 139 (1980). See Landers, 444 N.J. Super. at 323 (holding that subsection (j)(3) "follows the prior principles outlined in Lepis and its progeny").

Under Lepis, the moving party seeking to modify or terminate a support obligation must first make a threshold prima facie showing that "changed circumstances have substantially impaired the ability to support himself or herself." Lepis, 83 N.J. at 157.[2] In considering a proffer of changed

---

[2] Notably, the PSA does not contain a so-called anti-Lepis provision that can nullify the ordinary application of the "changed circumstances" doctrine. Cf. Amzler v. Amzler, 463 N.J. Super. 187, 190 (App. Div. 2020).

circumstances, it is often necessary for the court to delve into the financial status of both parties. Id. at 158.

When a prima facie showing is made, the court next must determine if a plenary hearing is warranted. Id. at 159. To obtain such a hearing, the moving party must "clearly demonstrate the existence of a genuine issue . . . [of] material fact." Ibid. In making this determination, the court should look to the certifications and supporting documents of the parties. Ibid.

The Family Part adhered to these principles in ruling to terminate Paul's alimony here, after considering the parties' financial circumstances. The court's determination that Paul was entitled to retire in 2016 at the age of sixty-six, particularly given her brain tumor and other serious health issues, is unassailable. Indeed, subsection (j)(3) of the alimony statute declares that a person who reaches "full retirement age" is deemed to have retired in "good faith." N.J.S.A. 2A:34-23(j)(3). "Full retirement age" is defined as "the age at which a person is eligible to receive full retirement for full retirement benefits under section 216 of the federal Social Security Act (42 U.S.C. § 416)."[3] Under the federal statute, Paul reached "full retirement age" at sixty-six. 42 U.S.C. §

---

[3] As we noted in Landers, 444 N.J. Super. at 322 n.5, the statute appears to contain a typo, and actually refers to section 416, not section 216, of the federal statute.

A-0655-19T1

416(l)(1)(c).  It was thus appropriate for the trial court to hold she had retired in good faith and, in light of her poor health, not require her to search for some other form of work outside of the nursing field.

The trial court was mindful that Valsalen himself also has serious health problems.  Even so, the court reasonably noted that Vansalen receives rental income from properties he owns.  Moreover, he is receiving derivative Social Security benefits as the result of his ex-wife's retirement[4], which helps compensate for the loss of alimony payments.  We do not second-guess the court's assessment of Valsalen's financial circumstances, including treating as non-recurring certain bed bug remediation costs in his claimed expenses for 2018.

There is also reasonable support in the record for the court's assessment that Valsalen could have made more prudent decisions to save and prepare for retirement.  The law does not disallow the court's observations that Valsalen could have made sounder investments with his post-divorce share of equitable distribution.  See Miller v. Miller, 160 N.J. 408, 420-21 (1999).

---

[4]  See 20 C.F.R. § 404.331 (concerning the eligibility of certain former spouses to receive Social Security benefits upon their ex-spouse's retirement).

A-0655-19T1

There was no need for a plenary hearing, since the trial court had sufficient financial documents from the parties to evaluate the totality of pertinent circumstances. No material facts of consequence concerning the parties' respective finances were genuinely disputed. Lepis, 83 N.J. at 159. The court also did not err in terminating the life insurance coverage that was logically tied to the alimony obligation.

Lastly, the court did not misapply its broad zone of discretion in declining to award counsel fees to either Valsalen, who was the non-prevailing party on the central issue of termination, or Paul. Gotlib v. Gotlib, 399 N.J. Super. 295, 314-15 (App. Div. 2008) (reiterating the court's broad discretion on fee-shifting requests in matrimonial litigation).

Having fully considered them, we conclude all other points and sub-points raised on appeal lack sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION