**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2559-19

DMITRY KORSUNSKY,

    Plaintiff-Appellant,

v.

SVETLANA KURINSKY,

    Defendant-Respondent.

_____

Argued March 10, 2021 – Decided April 13, 2021

Before Judges Whipple and Rose.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Somerset County, Docket No. FM-18-0388-07.

Stilianos M. Cambilis argued the cause for appellant (The Law Office of Rajeh A. Saadeh, LLC, attorneys; Rajeh A. Saadeh and Stilianos M. Cambilis, on the briefs).

Cynthia J. Lambo argued the cause for respondent, (Lambo & Lambo, LLC, attorneys; Cynthia J. Lambo, on the brief).

PER CURIAM

Plaintiff Dimitry Korsunsky (Father) appeals from an amended February 21, 2020 Family Part order[1] that allocated to him college costs and related expenses for the only child (Daughter) born of his marriage to defendant Svetlana Kurinsky (Mother). We affirm.

## I.

The parties were married in January 1998; Daughter was born in October 2000. The marriage was dissolved by a May 7, 2007 dual final judgment of divorce (JOD), which incorporated the parties' property settlement agreement (PSA). Five provisions of the PSA directly and indirectly address Daughter's education and Father's obligation to pay child support to Mother:

> 2. The parties shall jointly make any and all significant decisions concerning, but not limited to the child's health, education, religious education and welfare with a view toward adopting and following those policies that are in the child's best interests. The parties shall not take any action that would impair the other from being a full participant in their child's lives [sic].
>
> . . . .
>
> 25. [Father] shall pay to [Mother] child support for unemancipated child of the marriage in the amount of $1[]300 per month, . . . until the child is emancipated.

---

[1] Apparently, the February 21, 2020 order amended an earlier order to correct the transposing of the parties' obligations to pay Daughter's college expenses. The original order is not included in the record on appeal.

A-2559-19

. . . Child support shall be recalculated by the [p]robation [d]epartment every three years.

. . . .

33. The parties also agree to pay in proportion to each parties' net income, based on the preceding year's income tax return for the undergraduate college, junior college, vocational or trade school education of [Daughter]. Such payments shall include tuition, fees, books and room and board. The parties and [Daughter] shall consult with each other with respect to the child's choice of school.

34. In the event a child is attending school away from home, and not living in the home of [Mother], then [Father]'s obligation to pay child support to [Mother] for said unemancipated child shall be reduced by fifty percent. If the child resides at home while attending school, there shall be no reduction in support.

35. Both parties shall cooperate fully in the child's application process, both for admission and for financial aid, loans, grants and/or scholarships. They shall fully and promptly provide any necessary information, including tax returns and financial statements, and complete all necessary forms in a timely manner.

Following the sale of Father's business, the Family Part entered a consent order on March 14, 2014, governing Father's child support obligations. Relevant here, the parties agreed to an increase in Father's child support to "$2[]625 per month, retroactive to April 20, 2013." Notably, the consent order expressly provided: "All other terms and provisions of prior [c]ourt [o]rders," the JOD,

3

and PSA "shall remain in full force and effect except as specifically modified herein." No other provisions of the consent order pertained to Daughter's college education. Apparently, Father did not file a case information statement (CIS) with the Family Part prior to entry of the consent order, but a child support worksheet was attached thereto.

On April 8, 2019, Mother emailed Father that Daughter had received responses to college applications. Mother stated that Daughter, at Father's behest, had explored schools in the Boston area but did not find any strong programs in her desired field. Instead, Daughter narrowed her decision to two colleges – one in Florida and the other in Georgia. Mother further stated that the parties "need[ed] to address the financial side of her attending college." Mother included links to the schools' websites regarding tuition and financial aid and attached financial aid award letters for both colleges.

Six days later, on April 14, 2019, Father simply replied: "Let's try to work it out." Father advised he would be present in New Jersey that week and suggested the parties "meet and discuss." He also provided updated contact information because he did not "check this email [account] very often."

The parties met four days later, on April 18, 2019, but failed to reach an agreement concerning their allocation of Daughter's college tuition and

expenses. Daughter thereafter enrolled in the school located in Florida. Daughter was awarded merit-based scholarships, grants, and financial aid. She declined a work-study program, which would have interfered with her studies. Daughter's first semester expenses, including tuition and board, were $17,920. With no agreement as to allocation in place, Father paid $11,061 and Mother paid $6859.

After the parties' attempts at mediation failed, Mother filed an order to show cause to compel Father to: pay the outstanding balance on Daughter's second semester tuition – $10,427.45, plus interest and penalties; or withdraw those funds from Father's bank account if he failed to pay the tuition bill within three days.[2] Father cross-moved to deny mother's application. Father also sought: a downward modification of his child support obligation, retroactively to the commencement of Daughter's enrollment in college; and a declaration that Daughter waived his contribution toward her college expenses, or an offset of his obligation resulting from financial aid Daughter received or declined. In support of his cross-motion, father included a current CIS and his 2014 tax

---

[2] The parties were unable to reach an agreement for payment of Daughter's second semester tuition bill. Mother and Daughter paid $7,048.55; Father made no contribution. Accordingly, Daughter's tuition and costs became past due.

A-2559-19

returns, which indicated his annual net income was reduced from $660,824 in 2014 to $118,262.72 in 2019.

The motion judge declined to consider the matter as emergent. Following argument in the ordinary course, the judge issued a cogent statement of reasons accompanying the February 21, 2020 order. The judge squarely addressed the issues raised in view of the governing law and the terms of the PSA. Pertinent to this appeal, the judge granted, as modified, Mother's request to compel Father to pay the second semester tuition bill, apportioning eighty percent of the expenses to Father and ten percent each to Mother and Daughter. Accordingly, Father was ordered to pay $8,344.96 by February 28, 2020.

The motion judge also denied Father's request for a reduction in child support based on a change of circumstances, finding Father "failed to file his past [CIS](s) with required attachments." But the judge further observed "even if [Father] had included his prior [CIS, Father]'s certification contain[ed] no facts in support of his assertion that he ha[d] suffered a permanent involuntary reduction in income." Instead, the judge found Father "merely assert[ed] that he ma[d]e 'significantly less income,' without providing the reason behind the decrease in earnings."

A-2559-19

Nonetheless, the judge granted Father's request for a downward modification of child support, retroactive to Daughter's college start date. Pursuant to paragraph 34 of the PSA, the judge found the parties agreed "to reduce child support by [fifty percent] for any time that [Daughter] was attending school and not residing at [Mother]'s residence." Noting Mother provided proof that the college's 2019-20 academic calendar spanned approximately seven months, the judge determined Father was "entitled to a reduction in his child support obligation for the seven months that [Daughter was] away at college and not residing with [Mother]." Accordingly, the judge reduced Father's child support obligation from $2804 to $1986 per month.[3]

The motion judge also rejected Father's argument that Mother and Daughter failed to involve him in the application process, thereby entitling him to waive his contribution for college expenses; and Father's alternate argument for an offset of financial aid that Daughter "should have applied for." Referencing the April 2019 email exchange between the parties, the judge found

---

[3] It is unclear from the record when Father's $2625 per month child support obligation under the March 14, 2014 consent order was increased to $2804 per month. The judge calculated Father's obligation under paragraph 34 of the PSA as follows: "[Seven] months at $1[]402 per month and [five] months at $2[]804 per month equals $23,834 per annum. Averaged over a [twelve] month period, [Father]'s obligation is $1[]986 per month."

Mother "submitted substantial documentation showing she provided at least minimal information about [Daughter]'s college selection process to [Father]."

Conversely, Father "provided no credible, reliable, and verifiable proofs that the relationship between [him] and [Daughter] [wa]s non-existent." Citing Gac v. Gac, 186 N.J. 535, 545-46 (2006), and Black v. Black, 436 N.J. Super. 130, 146 (Ch. Div. 2013), the judge further determined Father failed to demonstrate Daughter resisted Father's attempts to improve or rehabilitate their relationship that would otherwise warrant termination of Father's "obligation to contribute to [Daughter]'s college education."

In his overlapping arguments on appeal, Father argues the motion judge erroneously: recalculated child support without considering Father's change in income here, where no CIS was filed in connection with the March 14, 2014 consent order; failed to consider Daughter's college attendance as a "change in circumstance" under Jacoby v. Jacoby, 427 N.J. Super. 109, 116 (App. Div. 2012); and misconstrued the terms of the PSA. Father claims the judge erroneously reduced Father's obligation under paragraph 34 of the PSA by fifty

percent for the seven months Daughter resides on campus – instead of reducing Father's obligation for the entire year while Daughter is enrolled in college.[4]

Father also renews his contention that Mother and Daughter failed to include him "in the college selection process." In sum, Father claims he "essentially serve[s] as a human ATM to finance [Mother and Daughter's] decisions made without his contribution, involvement, or knowledge until it came time for payment."

## II.

We review a trial judge's decision to grant or deny modification of child support by examining "whether, given the facts, the trial judge abused his or her discretion." J.B. v. W.B., 215 N.J. 305, 325-26 (2013) (internal quotation marks omitted). Thus, trial courts are afforded "substantial discretion in making a child support award" and "[i]f consistent with the law, such an award will not be disturbed unless it is manifestly unreasonable, arbitrary, or clearly contrary to

---

[4] It is unclear from the record whether Father raised this precise argument before the motion judge. In his certification in support of his cross-motion, Father requested reduction of his child support "pursuant to paragraph 34" of the PSA; he did not specifically contend that his obligation should be reduced year-round. The motion judge did not specifically consider whether the obligation should be reduced only for the months Daughter resides on campus or year-round while she is enrolled in college. Instead, the judge simply noted Mother "agree[d]" Father's obligation would be reduced by fifty percent for the months Daughter was not living at home.

A-2559-19

reason or to other evidence, or the result of whim or caprice." Foust v. Glaser, 340 N.J. Super. 312, 315-16 (App. Div. 2001) (citation and internal quotation marks omitted). "The Family Part's 'substantial discretion' in determining child support applies equally to compelling a parent to contribute to their child's college costs." Avelino-Catabran v. Catabran, 445 N.J. Super. 574, 588 (App. Div. 2016). However, we review the Family Part's interpretation of the law de novo, without giving any special deference to the trial court's decision. See N.J. Div. of Youth & Family Servs. v. R.G., 217 N.J. 527, 552 (2014).

A court may modify child support obligations when the party seeking modification "demonstrat[es] a change in circumstances warranting an adjustment." Jacoby, 427 N.J. Super. at 116. Generally, in determining child support in the context of college tuition, the factors enumerated in N.J.S.A. 2A:34-23(a) should be followed, as "the child support obligation is considered in light of all the financial circumstances of the parties and children." Raynor v. Raynor, 319 N.J. Super. 591, 614 (App. Div. 1999). In the context of allocating children's college expenses, the Family Part has "broad equitable powers" to achieve "substantial justice." Weitzman v. Weitzman, 228 N.J. Super. 346, 358 (App. Div. 1988).

"When a party to a comprehensive negotiated PSA seeks to modify any support obligation, that party must meet the threshold standard of changed circumstances." J.B., 215 N.J. at 327. The "party seeking modification of his or her child support obligation has the burden of demonstrating a change in circumstances warranting an adjustment." Jacoby, 427 N.J. Super. at 116 (citing Lepis v. Lepis, 83 N.J. 139, 157 (1980)). The moving party must present a prima facie case of changed circumstances, such as a demonstration of child maturation, increases in need, changes in income or child emancipation. See id. at 118-19. Moreover, "[a]s a necessary and preliminary step to meeting this burden, a movant is required to submit both a current and a prior CIS." Palombi v. Palombi, 414 N.J. Super. 274, 291 (App. Div. 2010); see also R. 5:5-4(a)(2).

In the present matter, the motion judge properly denied Father's cross-motion for modification of his child support obligation based on Father's claimed reduction in income since entry of the March 14, 2014 consent order. Father claims he did not include a CIS from 2014 because the March 14, 2019 consent order was entered without a CIS. Instead, to support his cross-motion, Father annexed his 2014 income tax returns and current CIS to his certification, and summarily stated he "ma[d]e significantly less in income than [he] did at the time of the March 14, 2014 [c]onsent [o]rder." We therefore conclude the

11

motion judge correctly determined Father failed to submit sufficient evidence that he "suffered a permanent involuntary reduction in income." Nothing in the record suggests the motion judge's finding in this instance was an abuse of discretion.

Moreover, we reject Father's seemingly belated argument that the judge failed to reduce his child support obligation to reflect Daughter's college attendance, under Jacoby, 427 N.J. Super. at 122. Unlike the parties in Jacoby, who had no agreement addressing child support while their children attended college, 427 N.J. Super. at 113-14, the parties in this case expressly contemplated a reduction in child support in paragraph 34 of the PSA. Father's argument to the contrary lacks sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Nor do we find any merit in Father's argument that the motion judge misinterpreted paragraph 34 of the PSA. "The polestar of contract construction is to discover the intention of the parties as revealed by the language used by them." EQR-LPC Urban Renewal N. Pier, LLC v. City of Jersey City, 452 N.J. Super. 309, 319 (App. Div. 2016) (internal quotation marks omitted). "[W]hen the intent of the parties is plain and the language is clear and unambiguous, a court must enforce the agreement as written, unless doing so would lead to an

absurd result." Quinn v. Quinn, 225 N.J. 34, 45 (2016). "[I]f the terms of [a] contract are susceptible to at least two reasonable alternative interpretations, an ambiguity exists" and "a court may look to extrinsic evidence as an aid to interpretation." Barr v. Barr, 418 N.J. Super. 18, 32 (App. Div. 2011) (quoting Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am., 195 N.J. 231, 238 (2008)). However, even if the contract is clear and unambiguous, a court "may consider 'all of the relevant evidence that will assist [the court] in determining [its] intent and meaning.'" Manahawkin Convalescent v. O'Neill, 217 N.J. 99, 118 (2014) (quoting Conway v. 287 Corp. Ctr. Assocs., 187 N.J. 259, 269 (2006)).

Here, the motion judge correctly interpreted paragraph 34 of the PSA. That paragraph governs two opposing scenarios. Pursuant to the first sentence, the parties agreed that Father's child support obligation would be reduced by one-half, "[i]n the event a child is attending school away from home, and not living in the home of [Mother]." Conversely, the second sentence provides: "If the child resides at home while attending school, there shall be no reduction in support." Clearly, the parties intended that Father's child support obligation would remain the same while Daughter resided at home with Mother and would be reduced only if Daughter resided on campus. The terms of paragraph 34 are

13

"clear and unambiguous"; therefore, the paragraph must be enforced as written. Quinn, 225 N.J. at 45.

Because Daughter lives with Mother for five months per year when she is home from college, the motion judge correctly reduced Father's child support obligation only for the seven months of the year that Daughter resides on campus. Moreover, we have previously recognized the need for parents to maintain a home for their children while their children attend college away from home. Jacoby, 427 N.J. Super. at 121-22. A plain reading of paragraph 34 achieves this end.

We likewise reject Father's contention that he is not obligated to pay for Daughter's college education because he was excluded from her decision-making process, and affirm for the reasons stated in the motion judge's well-reasoned opinion. R. 2:11-3(e)(1)(A). We add only the following comments.

Parents, under a variety of circumstances, may be obligated to pay for their child's college education. The Supreme Court set forth a dozen factors in Newburgh v. Arrigo, 88 N.J. 529, 545 (1982), which the Legislature then essentially adopted in an amendment to the support statute. Gac, 186 N.J. at 543; see N.J.S.A. 2A:34-23(a). Where there is no material factual dispute

between the parties, a plenary hearing for factual findings pertaining to the Newburgh factors is unnecessary. Jacoby, 427 N.J. Super. at 123.

Here, the parties agreed they would pay for Daughter's college education as set forth in paragraph 33 of the PSA. That paragraph further provides that the parties would "consult with each other with respect to [Daughter]'s choice of school." As such, the parties' dispute was not whether Father was obligated to contribute to Daughter's college expenses but rather, whether a failure to include him in the decision-making process – as required by paragraph 33 of the PSA – terminated that obligation. In that regard, Father's reliance on our Supreme Court's decision in Gac and its progeny is misplaced.

In Gac, the Court held a father was not obligated to pay for his daughter's college expenses, in part because: the daughter had no relationship with the father and repeatedly, over several years, rejected his efforts to reestablish a relationship; the father was not kept abreast of his daughter's plans as they were being made, including her decision to attend an expensive private college instead of a less-expensive state college; and the daughter did not request assistance with paying for her college expenses until after she had graduated from college and was saddled with loans. Id. at 545-46. Notably, the parties in Gac did not contemplate college expenses in a PSA.

15

By contrast, as the motion judge observed in the present matter, Father was not shut out of Daughter's college decision-making process. Daughter followed Father's advice to explore colleges in Boston. Father was informed of Daughter's two preferences after she received responses to her applications. When asked to contribute to Daughter's college expenses before Daughter even graduated high school, Father met with Mother and engaged in mediation to attempt to "work it out." Moreover, Father presented no evidence that he lacked a relationship with Daughter or that their relationship was irreconcilable. Even if Daughter refused to have a relationship with Father, "[a] relationship between a non-custodial parent and a child is not required for the custodial parent or the child to ask the non-custodial parent for financial assistance to defray college expenses." Gac, 186 N.J. at 546.

We therefore conclude the motion judge did not abuse his discretion in finding Father was consulted on Daughter's college decision-making as required by paragraph 33 of the PSA. Nor did the motion judge err in ordering Father to contribute to Daughter's college expenses as set forth in the PSA.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

16